# United States Court of Appeals
# for the Federal Circuit

---

**ARNOLD J. PARKS,**
*Claimant-Appellant,*

**v.**

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7089

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-2197, Judge Robert N. Davis.

---

Decided: May 3, 2013

---

DORIS J. HINES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for claimant-appellant. With her on the brief were RONALD L. SMITH and STEPHEN L. HENNESSY.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Classifications Unit, United States Department of Justice, of Washington, DC, argued for the respondent-appellee. With him on the brief were Stuart F. DELERY, Acting Assistant Attorney General, JEANNE E.

DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and JONATHAN E. TAYLOR, Attorney, United States Department of Veterans Affairs, of Washington, DC.

───────────────

Before RADER, *Chief Judge,* SCHALL and BRYSON, *Circuit Judges.*

RADER, *Chief Judge.*

The United States Court of Appeals for Veterans Claims affirmed the denial of service connection for Mr. Parks' asserted medical conditions. A. 1-5. Discerning no reversible error, this court affirms.

## I.

Mr. Parks served in Vietnam from 1964 to 1966. A. 2. Along with 6,000 other soldiers, Mr. Parks volunteered for a then-classified project called "Project 112." *Id.* Mr. Parks participated in a part of Project 112 called Shipboard Hazard Defense (SHAD). A. 119. As part of his participation, the United States government intentionally exposed him to three chemical warfare agents.

In 2000 and again in 2002, Mr. Parks sought service connection for diabetes type II with peripheral neuropathy and heart disability, asserting they were secondary to chemical exposure. A. 2. The Regional Office (RO) denied these claims. Mr. Parks appealed to the Board of Veterans' Appeals (Board).

In this time period, the United States government declassified certain details about the chemicals used in Project 112. Appellee's Br. 3. The Department of Defense reported that it did not know of any long-term effects caused by exposure to the chemicals that had been used in Project 112. However, the Department of Veterans Affairs (VA) stated that "specific health problems may be

linked to service-related chemical exposures on an individual basis when there is evidence of a causal link to military service." A. 213. As a result, in 2004 the Veterans Health Administration issued a directive requiring the VA to provide to Project 112 veterans "a thorough clinical evaluation," enhanced access to the VA health care system, and free care for "any illness possibly related to their participation in" Project 112. A. 122. *See also* 38 U.S.C. § 1710(e)(1)(E) (providing "hospital care, medical services, and nursing home care" for veterans who had participated in SHAD or Project 112).

The VA then sent Mr. Parks a letter identifying the chemicals to which he had been exposed and providing instructions on how to obtain additional medical examinations. A. 587. In 2007, the Board remanded Mr. Parks' appeal to the VA for it "to provide [Mr. Parks] with a complete Project 112 examination." A. 606. Carrying out the Board's remand order, the VA arranged for Mr. Parks to have medical exams for diabetes mellitus, heart conditions, and other issues Mr. Parks believed had been caused by his participation in SHAD. A. 604-06.

In May 2008, the VA selected Ms. Larson, an advanced registered nurse practitioner (ARNP), to determine whether there was a potential relationship between Mr. Parks' participation in SHAD and his medical conditions. In her report, Ms. Larson described Mr. Parks' exposure and his medical history. She then briefly described the medical literature concerning the health effects known to have been caused by exposure to the chemicals used in SHAD. She wrote that the literature established that there were no documented long-term health effects from exposure to the three chemicals, and that tests could not identify their presence in the human body long after exposure. A. 504. She ultimately stated that Mr. Parks' "claimed conditions of diabetes, neuropathy, heart condition and chronic bronchitis is [sic] less

likely than not secondary to his confirmed chemical exposures." *Id.* at 505.

Later, the RO issued a supplemental statement finding no service connection. A. 172. The RO relied upon Ms. Larson's report and other public medical authorities regarding the effects of the pertinent chemicals. A. 170-75.

With assistance of a non-lawyer from the Disabled American Veterans, Mr. Parks appealed to the Board. The Board found Mr. Parks' claim had been properly evaluated. *Parks v. Shinseki*, No. 10-2197, 2011 WL 6358019 (U.S. Vet. App. Dec. 20, 2011). Further, the Board found no service connection based upon (1) the fact that Mr. Parks had had no symptoms for forty years after his participation in Project 112, (2) he was and remained a heavy smoker, and (3) the only competent medical opinion came from an ARNP, who had found no service connection. *See id.*

Represented by counsel, Mr. Parks appealed to the Veterans Court. Mr. Parks for the first time asserted that the Board had erred by basing its decision on Ms. Larson's report because it did not constitute the required "competent medical evidence." 38 C.F.R. § 3.159(a)(1). In response, the Veterans Court did not remand for the Board to consider Ms. Larson's qualifications, but instead rejected Mr. Parks' position as a matter of law. The Veterans Court reasoned that under *Cox v. Nicholson*, 20 Vet. App. 563 (2007), "a nurse practitioner is able to provide a medical examination that meets the regulatory requirements of 'competent medical evidence'" in terms of Section 3.159(a)(1). A. 3. Further, the Veterans Court refused to consider information Mr. Parks' lawyers had found on the Internet after the Board's decision, which ostensibly showed Ms. Larson had specialized only in family medicine. A. 4. The Veterans Court refused to

consider the information because it was not part of the record before the Board. *Id.*

Mr. Parks appeals. This court has jurisdiction under 38 U.S.C. § 7292.

## II.

This court reviews questions of law *de novo*. 38 U.S.C. § 7292(d)(1); *see Chandler v. Shinseki*, 676 F.3d 1045, 1047 (Fed. Cir. 2012); *Boggs v. Peake*, 520 F.3d 1330, 1334 (Fed. Cir. 2008). However, absent a constitutional issue, the court may not review a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case. 38 U.S.C. § 7292(d)(2).

## III.

The government challenges the jurisdiction of this court, contending that ruling on Mr. Parks' arguments "would require this Court to apply law to facts, which it does not possess jurisdiction to do." Appellee's Br. 11. This court generally lacks jurisdiction to apply law to facts, and it will not do so here.

The Veterans Court's opinion did not recite any substantive facts in concluding that "a nurse practitioner is able to provide a medical examination that meets the regulatory requirements" of "competent medical evidence" under Section 3.159(a)(1). A. 3. Instead, it relied upon *Cox*'s statement that examinations need not always be conducted by physicians, the definition of "competent medical evidence" in Section 3.159(a)(1), and a dictionary definition of "nurse practitioners." A. 3. Removing all doubt about the nature of the question before this court, the government states that "no law or regulation" requires reversal here. Appellee's Br. 24.

The court may determine whether no law or regulation so requires without analyzing the application of those

laws to these facts. To that extent, this court has jurisdiction.

## IV.

The government argues that Mr. Parks waived the issue on appeal. Contrary to the approach of the Veterans Court and the briefing of the parties, the issue here is whether Mr. Parks waived his right to overcome the presumption that the selection of a particular medical professional means that the person is qualified for the task. The presumption is not whether all nurse practitioners are qualified to give any medical opinion because of how the dictionary defines their capabilities.

Two principles combine to control here. First, the VA is required in some circumstances, including this one, to rely only on "competent medical evidence" as defined by Section 3.159(a)(1). "Competent medical evidence" is "evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." 38 C.F.R. § 3.159(a)(1). Second, in some circumstances, including this one, the VA operates under the benefit of a rebuttable presumption of regularity. *See Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (Fed. Cir. 2009). This presumption provides that "in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their duties" and that "what appears regular is regular." *Id.* (quoting *Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004) and *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001)).

In the case of competent medical evidence, the VA benefits from a presumption that it has properly chosen a person who is qualified to provide a medical opinion in a particular case. *Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011). Viewed correctly, the presumption is not about the person or a job title; it is about the process.

A presumption exists, of course, to eliminate the burden to produce evidence. As a result, the Veterans Court did not need to examine the dictionary definition of "nurse practitioner" or to require the government to proffer evidence about the qualifications of the medical professional in this case. Repeated unnecessary remands for additional evidence complicate many cases and lead to system-wide backlogs and delays. Requiring the Board to present extensive evidence on the competence of a professional presumed to be competent is not only illogical, but adds to those delays. *See Sickels,* 643 F.3d at 1365 (recognizing that the Board is not required to "give reasons and bases for concluding that a medical examiner is competent unless the issue is raised by the veteran," because doing otherwise "would fault the Board for failing to explain its reasoning on unraised issues").

Even though the law presumes the VA has selected a qualified person, the presumption is rebuttable. *See Bastien v. Shinseki,* 599 F.3d 1301, 1307 (Fed. Cir. 2010) (explaining that a veteran challenging the qualifications of a VA-selected physician must set forth specific reasons why the veteran believes the expert is not qualified to give a competent opinion). The government argues that Mr. Parks waived any right to rebut the presumption that the VA has properly done its job. For the following reasons, this court holds that Mr. Parks indeed waived the issue.

## V.

The first step to overcoming the presumption is to object even where, as here, the veteran is acting *pro se. See Bastien*, 599 F.3d at 1307. While, for reasons discussed below, a *pro se* veteran's objection to the selection of a particular medical professional will be read sympathetically, there must be an objection.

If an objection is raised it may be necessary for the veteran to provide information to overcome the presump-

tion.  In this regard, Mr. Parks reads the court below and statements in *Cox* to support the notion that a nurse practitioner is always qualified to give competent medical opinions.  This court does not endorse that reading of *Cox*. The regulations may require inquiry beyond the possession of a particular degree, or the lack of one.  Section 3.159(a)(1) requires that to be competent, a medical opinion must be "provided by a person who is qualified through education, training or experience" to offer one. Further, the VA's stated purpose when adopting the regulation confirms what common sense and the plain language requires: competency requires some nexus between qualification and opinion.  Dep't. of Veterans Affairs Proposed Rules, 66 FR 17834-01, 17835 (Apr. 4, 2001) (citing *Espiritu v. Derwinski*, 2 Vet. App. 492 (1992) (stating that "opinions of witnesses skilled in that particular science, art or trade to which the question relates are admissible in evidence"), *overruled on other grounds by King v. Shinseki*, 700 F.3d 1339, 1345 (Fed. Cir. 2012)).

Given that one part of the presumption of regularity is that the person selected by the VA is qualified by training, education, or experience in the particular field, the presumption can be overcome by showing the lack of those presumed qualifications.  Thus, while the presumption is that a nurse practitioner selected by the VA is qualified to perform as designated, the presumption can be overcome. Thus, this court offers no opinion on whether an ARNP experienced only in family medicine may be qualified to opine on causes of diabetes.

But Mr. Parks never raised any concern over Ms. Larson's qualifications or those of an ARNP generally, let alone sought to overcome the presumption until his appeal to the Veterans Court.  Instead, at the Board and with the assistance of a non-lawyer from the DAV, Mr. Parks had asserted only that the report prepared by Ms. Larson should have been excluded because, contrary to

VA operating procedures, a physician had not signed it. A. 40.

To justify raising this argument only now, Mr. Parks emphasizes that the record must be construed sympathetically in favor of *pro se* veterans, citing *Comer v. Peake*, 552 F.3d 1363, 1369 (Fed. Cir. 2009). This argument misapprehends the applicability of *Comer*.

The Vietnam veteran in *Comer* initially filed a disability claim in 1988. He was found thirty percent disabled, but was not awarded any benefits. Acting *pro se*, he repeatedly asserted in subsequent proceedings in the RO and before the Board that he was entitled to a higher rating and to benefits. Any claim to a higher rating is construed as a claim for the highest possible rating. *Comer*, 552 F.3d at 1367 n.1. He was awarded benefits and his rating was repeatedly increased, eventually to seventy percent, though neither was made effective back to 1988. On appeal, the Veterans Court held that Comer had waived any argument that he was entitled to benefits effective as of 1988. This court reversed, holding that because he had argued that he was entitled to an earlier effective date at a higher rating, a sympathetic reading of the record showed that he had asserted he was entitled to TDIU benefits as of 1988. *Id.* at 1366-67.

In contrast, Mr. Parks never suggested that there was anything improper with the VA's selection of an ARNP, let alone raised objection to Ms. Larson specifically. Had Mr. Parks raised some objection—had he suggested that no nurse practitioner was competent to provide the opinion, or that Ms. Larson herself was in some way incompetent—then *Comer* would apply. But it is one thing to read a record sympathetically, as required by *Comer*; it is quite another to read into the record an argument that had never been made.

Finally, Mr. Parks argues that the Veterans Court abused its discretion in not remanding the case to consid-

er his competency objection. On this record, the Veterans Court did not abuse its discretion in deciding not to remand.

## VI.

This court has considered Mr. Parks' other arguments and finds them unpersuasive. Accordingly, the judgment of the Veterans Court is affirmed.

**AFFIRMED**