# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-1321

JAMES A. NOHR, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 18, 2014                    Decided October 30, 2014)

*Robert V. Chisholm*, with whom *Matthew J. Ilaqua* was on the brief, both of Providence, Rhode Island, for the appellant.

*Drew A. Silow*, with whom *Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.[1]

Before KASOLD, *Chief Judge,* and SCHOELEN and GREENBERG, *Judges*.

SCHOELEN, *Judge*:  The appellant, James A. Nohr, appeals through counsel an April 19, 2013, Board of Veterans' Appeals (Board) decision that denied disability compensation benefits for a dysthymic disorder.  Record of Proceedings (R.) at 3-19.  This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  This matter was referred to a panel of the Court, with oral argument, to address Mr. Nohr's argument that the Due Process Clause of the Fifth Amendment of the U.S. Constitution required VA to afford him

---

[1]  Will A. Gunn was General Counsel for the appellee when his brief was submitted to the Court, but as of the date this decision was issued, Mr. Gunn had resigned.

the opportunity to confront adverse medical evidence through the use of interrogatories or service of a subpoena on a Veterans Health Administration (VHA) medical expert.[2]

Because the Court holds that Mr. Nohr's submission of "interrogatories," which requested documents and clarification from the VHA expert, reasonably raised issues concerning (1) the competence of the VHA expert, (2) the adequacy of her opinion, and (3) VA's duty to assist, and because the Board failed to address whether these reasonably raised issues required further development or to provide a statement of reasons or bases why such development was not necessary, we find it unnecessary to address Mr. Nohr's constitutional argument. *See generally Bucklinger v. Brown*, 5 Vet.App. 435, 440-41 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))). Accordingly, the Court will vacate the Board's decision and remand the matter for further proceedings consistent with this opinion.

## I. BACKGROUND

Veteran James A. Nohr served on active duty in the U.S. Air Force from July 1971 to February 1975. R. at 291-92. Mr. Nohr's enlistment examination did not identify any psychiatric disability and, therefore, he is presumed to have entered service in sound condition with respect to any psychiatric disorder. R. at 538-41. A June 1972 service medical record reveals that Mr. Nohr complained of being tired, rundown, and nervous, with decreased appetite and sleep, and incidental personal problems. R. at 542. In the same clinical record, the medical provider reported that Mr. Nohr had "[p]roblems [with] facing separation from home, isolation in service, and having to do tasks in [the] military." *Id*. No diagnosis was rendered; however, his June 1974 discharge examination noted frequent trouble sleeping, depression, and excessive worry related to "shift work." R. at 544-47.

---

[2] Oral argument was held on September 18, 2014, at the University of Pittsburgh School of Law in Pittsburgh, Pennsylvania. The Court extends its appreciation to the law school for its hospitality.

In February 2003, Mr. Nohr filed a claim for disability compensation for a dysthymic disorder.[3] R. at 735-38. In support of his claim, Mr. Nohr submitted a February 2003 letter from a private physician stating that he had been treating Mr. Nohr for three years for various ailments, including depression, and felt that his condition originated during military service. R. at 237. In May 2003, Mr. Nohr underwent a VA compensation and pension examination, in which the examiner diagnosed a dysthymic disorder, ongoing since childhood; alcohol dependency, in full sustained remission since 1988; and cocaine abuse and polysubstance abuse, in full sustained remission since 1988. R. at 648-51. The examiner noted that Mr. Nohr's "[p]sychiatric symptoms are constant and predictable since age 16 with anhedonia, low motivation, and low grade dysthymia" and opined that Mr. Nohr's chronic dysthymic disorder and schizoid traits existed prior to enlistment and were not exacerbated by military service. R. at 650-51.

The regional office (RO) denied Mr. Nohr's claim in a June 2003 rating decision, which he timely appealed to the Board. R. at 551-52, 574-83, 594-95, 632-40. In a May 2007 statement in support of claim, Mr. Nohr related that his lack of job satisfaction in the military probably led to his depression, which in turn led to his drug and alcohol use. R. at 444. In April 2007 and August 2009, the Board remanded Mr. Nohr's claim for medical examinations to determine whether there was a nexus between his psychiatric disorder and service. R. at 404-12, 490-98. Following an October 2009 VA mental disorders examination (R. at 378-81), in August 2010, the Board denied Mr. Nohr's claim, finding that the presumption of sound condition applied, but that the evidence clearly and unmistakably established that his dysthymic disorder preexisted and was not aggravated in service. R. at 149-71.

Mr. Nohr did not dispute the Board's determination that the evidence clearly and unmistakably established that his dysthymic disorder preexisted service. However, on appeal, the Court granted the parties' joint motion for remand (JMR), in which they agreed that the October 2009 VA medical opinion was equivocal as to aggravation and, therefore, insufficient to constitute clear

---

[3] "Dysthymic disorder" is "a mood disorder characterized by depressed feeling (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 548 (30th ed. 2003).

and unmistakable evidence that Mr. Nohr's dysthymic disorder was not aggravated during service. R. at 135-42. On remand, the Board exercised its judgment, pursuant to 38 U.S.C. § 7109 and 38 C.F.R. § 20.901, to secure a VHA medical expert opinion to address whether there is clear and unmistakable evidence that Mr. Nohr's preexisting dysthymic disorder was not aggravated by service. R. at 114-16.

In July 2011, Dr. Feng, a VHA psychiatrist, explained that

[d]ysthymic disorder is best characterized as long standing, fluctuating, and low-grade depression. It is often clinically fluctuating in and out of a major depression, which is commonly the reason for seeking medical and mental health attention. Due to its early and insidious onset (i.e., in childhood, adolescence, or early adult life) as well as a chronic course, the symptoms have become so much a part of the individual's day-to-day experience, they are often not reported unless directly asked about by the interviewer. The clinical picture of dysthymic disorder is qui[te] varied, with some patients proceeding to major depression, while others manifest the pathology largely at the personality level, [and] sometimes patients comorbiding with substance-related disorder in order to [sic] for their chronically depressed state.

R. at 112. Based on a review of Mr. Nohr's claims file, including the May 2003 and October 2009 VA mental health examinations, Dr. Feng noted that Mr. Nohr "ha[d] not endorsed any traumatic event other than his ordinary military duty" and opined that "there is obvious and manifest evidence that [Mr. Nohr's] preexisting dysthymic disorder was not aggravated by service." *Id*.

The Board denied Mr. Nohr's claim for the second time in October 2011. R. at 84-100. On appeal, the Court granted another JMR, in which the parties agreed that Dr. Feng's opinion was not supported by an adequate rationale and the Court remanded the matter to seek clarification from Dr. Feng. R. at 78-83.

In July 2012, Dr. Feng provided an addendum in which she again stated that Mr. Nohr "did not endorse any traumatic event other than his ordinary military duty" and explained that Mr. Nohr's in-service complaints were typical of dysthymic disorder "running its own course." R. at 52. Dr. Feng reaffirmed her opinion that there is obvious and manifest evidence that Mr. Nohr's preexisting dysthymic disorder was not aggravated by service and commented that "[h]is alcohol and substance use was certainly the contributor to his depressive mood condition during [military service]." *Id*. In conclusion, Dr. Feng stated: "Respectfully, while I recognize my personal limitation, the Board

4

should seek for the next expert opinion if this examiner's report still is not satisfied by the Board review." R. at 53.

The Board provided Mr. Nohr and his representative a copy of Dr. Feng's opinion and informed them that Mr. Nohr had 60 days in which to review the medical opinion and respond with additional evidence or argument. R. at 49-51. In response, Mr. Nohr, through counsel, submitted eleven questions and requests for documents, which he referred to as "interrogatories," for Dr. Feng to answer concerning her medical opinion. R. at 42-43. In the alternative, he requested that the Board subpoena Dr. Feng to appear at a personal hearing. R. at 42. Mr. Nohr's written request contained the following questions and requests for documents:

> 1. State your full name.
> 2. State your place of employment and the address.
> 3. Provide a copy of your most recent and up[-]to[-]date curriculum vitae.
> 4. Provide a copy of the Board . . . request letter to you that you refer to in the first line of your medical opinion dated July 30, 2012[,] for James A. Nohr (here[in]after "the [v]eteran").
> 5. Provide copies of all written correspondence between you and the Board regarding the [v]eteran including, but not limited to e-mails, letters, faxes, and the like.
> 6. Provide a copy of the transcript from the July 30, 2012[,] interview between you and the [v]eteran.
> 7. Provide a copy of all handwritten notes made by you during your interview with the [v]eteran from July 30, 2012.
> 8. Explain the phrase "personal limitation" referred to in the last paragraph from your July 30, 2012[,] opinion of the veteran.
> 9. Explain your etiology for use of the terms "obvious and manifest" when referring to clear and unmistakable evidence referred to in the second paragraph of your July 30, 2012[,] opinion of the [v]eteran.
> 10. Please elaborate on what a "typical dysthymic disorder picture" is, as you refer to it in the second paragraph of your July 30, 2012[,] opinion of the [v]eteran.
> 11. Please elaborate further on what you consider to be "ordinary military duty" as you so state in the second paragraph of your July 30, 2012[,] opinion of the [v]eteran.

R. at 43.

Mr. Nohr also submitted additional lay evidence – an affidavit – in which he stated that he had always displayed avoidant behavior, but that military service exacerbated this behavior. R. at 44-45. He explained that living on a military base, working as a military policeman (which required him to carry a gun), and guarding weapons contributed to his sense of hopelessness and depression, and aggravated his stress. R. at 44. He also stated: "While I was in service, I turned to alcohol and

drugs in order to relieve my stress and depression. I used alcohol and drugs as a crutch so that I could function socially." *Id*.

On April 19, 2013, the Board issued the decision here on appeal denying disability compensation benefits for a dysthymic disorder. R. at 3-19. The Board denied Mr. Nohr's request to have Dr. Feng answer interrogatories stating that "[t]here is no VA regulatory authority for interrogatories, and it is stressed that the benefits system is non-adversarial in nature." R. at 7-8. The Board also denied Mr. Nohr's request to subpoena Dr. Feng, finding his request "outside the scope of the situations contemplated by [38 C.F.R. § 20.711]" because "[t]he regulation does not contemplate issuing subpoenas to allow witnesses to be questioned outside the context of a personal hearing, and even then, the individual must reside within a 100 mile radius of the hearing."[4] R. at 7. Noting that its authority to issue subpoenas is "discretionary," the Board refused to exercise its discretion, finding that Mr. Nohr had been provided 60 days to respond to Dr. Feng's opinion and many avenues to submit additional evidence and argument in support of his claim. R. at 8-9.

Notwithstanding the Board's refusal to send Mr. Nohr's questions to Dr. Feng or issue a subpoena, the Board determined that the Secretary had fulfilled his duty to assist Mr. Nohr, noting that (1) Mr. Nohr had not referred to outstanding records that he wanted VA to obtain, and (2) the Board had obtained an adequate VHA expert opinion, which was based on a review of the claims file, including Mr. Nohr's statements, and supported by an "extensive rationale." R. at 7, 9. Finally, the Board afforded significant probative value to and relied upon Dr. Feng's negative opinion to conclude that there is clear and unmistakable evidence that Mr. Nohr's preexisting dysthymic

---

[4] At oral argument, the Secretary's counsel was unable to satisfactorily answer whether the statutory and regulatory requirement that the witness reside within a radius of 100 miles from the place of the hearing may be calculated from a VA facility with equipment permitting the witness to participate in an electronic hearing. *See* 38 U.S.C. § 5711(a)(1) (granting the Secretary discretionary power to "issue subpoenas for and compel the attendance of witnesses within a radius of 100 miles from the place of hearing"); *see also* 38 U.S.C. § 7107(e)(1) (authorizing the Chairman to request that the Secretary "provide suitable facilities and equipment to the Board . . . to enable an appellant located at a facility within the area served by a[n] [RO] to participate, . . . by electronic or other means, in a hearing with a Board member or members sitting at the Board's principal location"); 38 U.S.C. § 7107(e)(2) (providing that an appellant may participate in electronic hearings in lieu of personally appearing before the Board and that such hearings "shall be conducted in the same manner as, and shall be considered the equivalent of, a personal hearing").

6

disorder did not increase in severity beyond its natural progression as a result of military service. R. at 15-19. This appeal followed.

## II. ANALYSIS

Every veteran is presumed sound upon entry into service, except for defects, infirmities, or disorders noted at entry. 38 U.S.C. § 1111. VA can overcome this presumption by clear and unmistakable evidence that the injury or disease manifested in service was *both* preexisting and not aggravated by service. *Id*.; *see Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004). "Clear and unmistakable evidence" means that the evidence "'cannot be misinterpreted and misunderstood, i.e., it is undebatable.'" *Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (citing *Vanerson v. West*, 12 Vet.App. 254, 258-59 (1999)). The Secretary may show a lack of aggravation by establishing, with clear and unmistakable evidence, either that there was no increase in disability during service or that any aggravation was due to the "natural progress" of the preexisting disease or injury. *See Wagner*, 370 F.3d at 1096. VA must rely on affirmative evidence to prove that there was no aggravation. *Horn v. Shinseki,* 25 Vet.App. 231, 235 (2012).

### A. The Parties' Arguments

Mr. Nohr primarily argues that the Board violated his Fifth Amendment due process rights when it denied him a meaningful opportunity to participate in the development of his claim by refusing to allow him to question Dr. Feng and preventing him from obtaining information necessary to effectively respond to Dr. Feng's unfavorable medical opinion. Appellant's Brief (Br.) at 6-18. Mr. Nohr asserts that the Board's error is prejudicial in this case, where VA bore the formidable burden of establishing the lack of in-service aggravation by clear and unmistakable evidence. *Id*. at 19-20. He contends that Dr. Feng's answers to his questions may have provided a basis to reduce the probative value of her opinion so that the Board would not have had a sufficient evidentiary basis to rebut the presumption of soundness. *Id*. Mr. Nohr also argues that the Board incorrectly applied 38 U.S.C. § 1111 and failed to weigh or provide reasons and bases for rejecting favorable evidence – his affidavit submitted in response to Dr. Feng's opinion. *Id*. at 21-26.

The Secretary asserts that VA disability benefits claimants do not possess a Fifth Amendment due process right to submit interrogatories to doctors who provide VA medical opinions, or to

otherwise confront doctors at a hearing. Secretary's Br. at 9-20. Even assuming the existence of a due process right to confront doctors who provide adverse medical opinions, the Secretary contends that in this case any error was harmless because the interrogatories submitted by Mr. Nohr would not have affected Dr. Feng's underlying determination that Mr. Nohr's dysthymic disorder was not aggravated in service. *Id*. at 21-25. The Secretary also argues that the Board properly relied on Dr. Feng's opinion to conclude that the evidence clearly and unmistakably established that Mr. Nohr's dysthymic disorder was not aggravated by service and that the Board's analysis adequately contemplated Mr. Nohr's affidavit even though it was not explicitly discussed. *Id*. at 25-29.

B. The Board's Authority To Secure a VHA Advisory Opinion

and the Claimant's Right To Respond

It is undisputed that the Board has discretionary authority to obtain an advisory medical opinion, from VA and non-VA medical experts, when such an opinion "is warranted by the medical complexity or controversy involved." 38 U.S.C. § 7109(a); *see Padgett v. Nicholson*, 19 Vet.App. 133, 145 (2005) (holding that section 7109(a) "gives the Board the authority to secure expert medical opinions from both VA and non-VA medical experts, and that such authority includes the authority to consider in the first instance the information so obtained . . . particularly given the fact that due-process protections are provided in the statute and regulation"), *withdrawn on other grounds* 19 Vet.App. 334 (2005), *rev'd* 473 F.3d 1364 (Fed. Cir. 2007); *see also Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002); *Winsett v. West*, 11 Vet.App. 420, 426 (1998) ("[W]hether the Board chooses to refer a particular case for an independent medical opinion is entirely within its discretion."). The implementing regulation for section 7109 provides that "[t]he Board may obtain a medical opinion from an appropriate health care professional in the [VHA] or the Department of Veterans Affairs on medical questions involved in the consideration of an appeal when, in its judgment, such medical expertise is needed for equitable disposition of an appeal." 38 C.F.R. § 20.901(a) (2014). The Secretary's authority to obtain such an opinion is not limited by the fact that the developed evidence is requested to rebut the presumption of sound condition. *See Horn*, 25 Vet.App. at 242-43 (noting that the Court has "given VA wide latitude in developing evidence to rebut presumptions"); *see also Douglas v. Shinseki*, 23 Vet.App. 19, 24 (2009) ("[T]he Secretary's

8

authority to develop a claim necessarily includes the authority to collect and develop evidence that might rebut the presumption of service connection.").

Both section 7109(c) and the Secretary's regulation, 38 C.F.R. § 20.903(a), require the Board to (1) notify an appellant and his representative, if any, that the Board has requested a medical opinion, and (2) furnish a copy of the medical opinion to the appellant and his representative. 38 U.S.C. § 7109(c); 38 C.F.R. § 20.903(a) (2014). Additionally, § 20.903(a) provides that "[a] period of 60 days from the date the Board furnishes a copy of the opinion will be allowed for response, which may include the submission of relevant evidence or argument." 38 C.F.R. § 20.903(a).

In the instant case, the Board furnished a copy of Dr. Feng's supplemental medical opinion to Mr. Nohr and his representative on August 23, 2012. R. at 49-51. On September 17, 2012, well within the 60-day period to provide a response, Mr. Nohr submitted additional evidence (an affidavit) and written questions concerning Dr. Feng's medical opinion. R. at 42-45. Mr. Nohr requested that the Board forward the questions to Dr. Feng or, in the alternative, that it subpoena Dr. Feng to appear at a personal hearing. *Id*.

The Board did not respond to Mr. Nohr's correspondence, but instead denied both requests in the decision here on appeal. R. at 8-9. In denying Mr. Nohr's request to have Dr. Feng answer the submitted questions, the Board stated that, "[p]ursuant to § 20.903, [Mr. Nohr] was afforded 60 days to submit evidence and/or argument in response [to the VHA opinion]. There is no provision for interrogatories to the specialist." R. at 8. The Board also "stressed that the benefits system is non-adversarial in nature." *Id*.

At the outset the Court notes that the Board's refusal to send Mr. Nohr's questions and request for documents to Dr. Feng and its corresponding statement stressing the nonadversarial nature of the VA benefits system looks like a knee-jerk reaction based upon Mr. Nohr's characterization of his questions as "interrogatories." With the increasing involvement of attorneys at the administrative level and the corresponding complexity that attorney involvement can generate, the veterans bar and VA must proceed with caution so as not to unravel Congress's desire to preserve and maintain the unique character and structure of the paternalistic, nonadversarial veterans' benefits system. *See* H.R. REP. NO. 100-963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794-95; *see also Forshey*

*v. Principi*, 284 F.3d 1335, 1360 (Fed. Cir. 2002) (Mayer, C.J., dissenting) ("[T]he veterans' system is constructed as the antithesis of an adversarial, formalistic dispute resolving apparatus. It is entirely inquisitorial in the [ROs] and at the Board . . . where facts are developed and reviewed. The purpose is to ensure that the veteran receives whatever benefits he is entitled to, not to litigate as though it were a tort case."). At the same time, the Board should not fixate on the terminology used by veterans' counsel and lose sight of its duty to address all issues reasonably raised by the appellant or by the evidence of record. *See Robinson v. Peake*, 21 Vet.App. 545 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

In this case, Mr. Nohr's characterization of his questions and request for documents as "interrogatories" – a discovery tool frequently used in adversarial proceedings – and the Board's preoccupation with the affixed label, prevented the Board from seeing the forest for the trees. Had the Board examined the scope and nature of Mr. Nohr's questions to Dr. Feng and the documentary evidence requested by Mr. Nohr, it would have been apparent to the Board that Mr. Nohr's questions reasonably raised issues concerning (1) Dr. Feng's competence, (2) the adequacy of Dr. Feng's opinion, and (3) VA's duty to assist. The Court will address each of these issues in turn.

### *i. Dr. Feng's Competence and the Adequacy of her Opinion*

It is now well settled that "VA benefits from a [rebuttable] presumption that it has chosen a person who is qualified to provide a medical opinion in a particular case." *Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013). The U.S. Court of Appeals for the Federal Circuit has stated that it is incumbent on the veteran to raise the issue before the Board or it will be waived and cannot be raised on appeal. *Rizzo v. Shinseki*, 580 F.3d 1288, 1291 (Fed. Cir. 2009); *see also Sickels v. Shinseki*, 643 F.3d 1362, 1365 (Fed. Cir. 2011) (recognizing that the Board is not required to "give reasons and bases for concluding that a medical examiner is competent unless the issue is raised by the veteran," because doing otherwise "would fault the Board for failing to explain its reasoning on unraised issues"). "Given that one part of the presumption of regularity is that the person selected by . . . VA is qualified by training, education, or experience in the particular field, the presumption can be overcome by showing the lack of those presumed qualifications." *Parks*, 716 F.3d at 585.

When the Board relies on a medical advisory opinion obtained pursuant to 38 U.S.C. § 7109(a), that opinion must be adequate. *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008). A medical

opinion is considered adequate "where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's '"evaluation of the claimed disability will be a fully informed one."'" *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (quoting *Ardison v. Brown,* 6 Vet.App. 405, 407 (1994) (quoting *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991))). Additionally, the opinion must "support its conclusion with an analysis that the Board can consider and weigh against contrary opinions." *Stefl,* 21 Vet.App. at 124-25; *see also Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 301 (2008) (noting that "a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two").

Mr. Nohr's questions included a request for Dr. Feng to (1) "explain the phrase 'personal limitation'" in the last paragraph of her July 2012 opinion (*see* R. at 53 ("Respectfully, while I recognize my personal limitation, the Board should seek for the next expert opinion if this examiner's report still is not satisfied by the Board review.")), and (2) provide her "most recent and up[-]to[-]date curriculum vitae" (R. at 43). Dr. Feng's statement of some unspecified "personal limitation" in providing the requested opinion arguably can be read as suggesting that there may have been some irregularity in the process of selecting Dr. Feng to provide an opinion. *See Wise v. Shinseki*, 26 Vet.App. 517, 527 (2014) (holding "where, as here, a medical professional admits that he or she lacks the expertise necessary to provide the opinion requested by the Board . . . the opinion itself creates the appearance of irregularity in the process resulting in the selection of that medical professional that prevents the presumption of competence from attaching, and the Board must therefore address the medical professional's competence before relying on his or her opinion"). Given that a veteran challenging the qualifications of a VA-selected physician must set forth specific reasons why the veteran believes the expert is not qualified to give a competent opinion, *see Bastien v. Shinseki*, 599 F.3d 1301, 1307 (Fed. Cir. 2010), Mr. Nohr's request for Dr. Feng's curriculum vitae, made while his case was still pending at the Board, reasonably sought information necessary to overcome the presumption of competence generally afforded to VA-selected physicians. The request is not, as argued by the Secretary's counsel, a fishing expedition.

In the face of a request for documents – here, Dr. Feng's curriculum vitae – and a potentially ambiguous statement by Dr. Feng, the Board cannot hide behind the presumption of regularity and

ignore Mr. Nohr's request for assistance in obtaining documents necessary to rebut the presumption. Indeed, it is unclear how Mr. Nohr is expected to evaluate and effectively challenge Dr. Feng's presumed expertise unless he is provided with the requested information.

Dr. Feng's statement also reasonably raised an issue concerning the adequacy of her opinion, and Mr. Nohr's request for an explanation of the phrase "personal limitation" should have signaled to the Board that clarification may have been necessary. At a minimum, Mr. Nohr's request required a response from the Board – i.e., a statement of reasons or bases why Mr. Nohr was not entitled to answers to his questions and why clarification was unnecessary. *See Vazquez-Flores v. Peake*, 22 Vet.App. 37, 50 (2008) (the Board should return a medical report to the examiner for clarification, or explain why such action is unnecessary, when a key point in the report could be fairly read to have different meanings), *vacated on other grounds sub nom. Vazquez-Flores v. Shinseki*, 580 F.3d 1270 (Fed. Cir. 2009); 38 C.F.R. § 19.9(a) (2014) (stating that the Board must remand a case for additional development when further evidence or clarification of the evidence "is essential for a proper appellate decision"). The Board's failure to return Dr. Feng's report for clarification or provide a statement of reasons or bases why such action is unnecessary frustrates judicial review. 38 U.S.C. § 7104(d)(1); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"); *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

### ii. VA's Duty To Obtain Records

The Board also concluded that VA had satisfied its duty to assist Mr. Nohr, stating that Mr. Nohr "has at no time otherwise referenced outstanding records that he wanted VA to obtain or that he felt was relevant to the claims." R. at 7. To the contrary, Mr. Nohr's "interrogatories" – specifically, questions three through seven – all request documents potentially held by Dr. Feng, a VHA employee. *See supra* p. __; *see also* R. at 43. It is unclear to the Court why Mr. Nohr's request for documents did not adequately identify "outstanding records that he wanted VA to obtain" and why VA was not obligated to make reasonable efforts to assist Mr. Nohr in obtaining the records.

12

*See* 38 U.S.C. § 5103A(a) ("The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit."); *see also* 38 U.S.C. § 5103A(b) ("Assistance in obtaining records"), (c)(1),(C) ("Obtaining records for compensation claims," including records held at Department health-care facilities and "[a]ny other relevant records held by any Federal department or agency"); 38 C.F.R. § 3.159(c)(2), (3) (2014).

Again, it appears that the Board reflexively reacted to the label – "interrogatories" – attached to Mr. Nohr's request for documents and failed to address whether VA's duty to assist required VA to assist Mr. Nohr in obtaining the documents. The Board's failure to address the substance of Mr. Nohr's questions and whether the duty to assist obligated VA to attempt to obtain the requested records before adjudicating Mr. Nohr's claim renders inadequate the Board's statement of reasons or bases. *See Tucker* and *Allday*, both *supra*; *see also Tatum v. Shinseki*, 26 Vet.App. 443, 451 (2014) ("[W]hen a claimant informs the Secretary that records appear to be missing, the Secretary should, at a minimum, respond to the claimant."); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) ("Inherent in the duty-to-assist obligation . . . is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other."), *abrogated on other grounds by McGinnis v. Brown*, 4 Vet.App. 239 (1993); 38 C.F.R. § 3.159(e)(1).

### iii. *Prejudice*

Having determined that the Board erred, the Court must determine whether Mr. Nohr was prejudiced by this error. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 406-07 (2009). The Court finds that the Board's reasons-or-bases error is prejudicial because the Board concluded that Dr. Feng's opinion was adequate and supported by an extensive rationale without addressing Mr. Nohr's questions, which reasonably implicated Dr. Feng's competence and the adequacy of her opinion. Where, as here, the burden falls on VA to demonstrate by clear and unmistakable evidence that Mr. Nohr's dysthymic disorder was not aggravated by service, the Court cannot say that the Board's refusal to address these issues is harmless. As argued by Mr. Nohr, had he received the documentary evidence and answers to his questions, he may have been able to diminish the probative value of Dr. Feng's medical opinion below the level of "clear and unmistakable evidence" so that the Board, on the current record, would not have had a sufficient evidentiary basis to find the presumption of

13

soundness rebutted. Although Mr. Nohr has the burden to demonstrate nexus – i.e., that his dysthymic disorder is related to service – the Board never reached this issue because it ended its analysis after finding that the presumption of soundness was rebutted. Accordingly, the Court concludes that the record is not sufficiently developed to find that the Board's error did not harm Mr. Nohr. *See Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred."); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered" the Board's determinations).

### C. Other Matters

The Court deems it unnecessary to address Mr. Nohr's constitutional argument because VA's statutory and regulatory duty to assist Mr. Nohr in the development of his claim and the Board's requirement to provide a written statement of reasons or bases on all material issues of fact and law presented provide Mr. Nohr an adequate remedy.[5] It also is unnecessary for the Court to address Mr. Nohr's alternative request that the Board subpoena Dr. Feng to appear at a Board hearing. If, however, the Board determines that VA's duty to assist does not require VA to obtain the requested documents or seek clarification from Dr. Feng, the Board must reconsider Mr. Nohr's request to subpoena Dr. Feng.

Because the Court is remanding this matter for readjudication, as well as possible additional development, and Mr. Nohr's remaining arguments are assertions of inadequate reasons or bases by

---

[5] Aside from any constitutional due process requirements that may apply to administrative adjudications, it is well-established that the Board must ensure that it provides an appellant fair process in the adjudication of his claim. *See Austin v. Brown*, 6 Vet.App. 547 (1994); *Thurber v. Brown*, 5 Vet.App. 119 (1993). When the Board develops or obtains evidence, as in this case, fair process and the Secretary's regulation, 38 C.F.R. § 20.903, require the Board to "provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it." *Thurber*, 5 Vet.App. at 126; *see also Austin*, 6 Vet.App. at 551 (holding that a claimant's "reasonable opportunity to respond" to an independent medical opinion is "not limited to argument or comment, but also include[s] the claimant's right to submit additional evidence"). Inherent in the Board's duty to provide a claimant a reasonable opportunity to respond to the newly acquired evidence is the countervailing duty to consider and address the claimant's response. Refusing to consider the reasonably raised issues because they were not presented in the form of "evidence" or "argument" is a hollow application of *Thurber* and § 20.903.

the Board, his remaining arguments are moot. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998). In pursuing the matter on remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

### III. CONCLUSION

Accordingly, the Board's April 19, 2013, decision is VACATED and the matter is REMANDED for further proceedings consistent with this decision.