HUGHES, Circuit Judge,
with whom PROST, Chief Judge, LOURIE, O’MALLEY, TARANTO, and CHEN, Circuit Judges, join,
concurring in the denial of the petition for rehearing en banc.
I concur in the denial of the petition for rehearing en banc but write separately to note the limited nature of the rebuttable presumption and emphasize the VA’s obligations to develop the record and to assist the veteran. Those duties ensure that a veteran will have access to information regarding a medical examiner’s credentials when appropriate. And if the VA fails to properly fulfill these obligations, its decisions are subject to case-specific review and reversal by both the Board of Veterans Appeals and the Court of Appeals for Veterans Claims, and to review in this court for improper legal restrictions and any constitutional violations. The limited, rebuttable presumption of competency simply permits the VA to assume that a chosen medical examiner is competent to conduct examinations. It does not provide a presumption that the examination report and the information contained therein is correct — the probative weight of the report still must be determined by the regional office and the Board. And despite this presumption, a veteran may always request information to challenge an examiner’s competency from the regional office or the Board. I see no legal reason to object to the limited, rebuttable presumption of competency as long as the Secretary’s other legal obligations, including the duty to assist and to develop the record, are fulfilled.
In fact, the Board has frequently justified providing veterans with information regarding examiners’ qualifications based on its duty to assist. See No. 1501503, 2015 WL 1194124, at *8 (Bd. Vet. App. Jan. 13, 2015) (“Although the RO directed the Veteran to contact the doctor directly for such, the Board finds that ensuring receipt of the CV is, in this instance, subject to the duty to assist the Veteran in substantiating his claim.”); No. 1543733, 2015 WL 7875614, at *2 (Bd. Vet. App. Oct. 13, 2015) (“Although the Board’s Privacy Act Officer directed the attorney to contact the facilities where the examinations were held for such information, ensuring receipt of the CVs is, in this instance, subject to the duty to assist the Veteran in substantiating his claims.”). Likewise, in Nohr v. McDonald, the Veterans Court explicitly recognized that the VA’s duty to assist and its duty to obtain records obligated the Secretary to assist the veteran in developing the record regarding an examiner’s competency. As the court said, “the Board cannot hide behind the presumption of regularity and ignore Mr. Nohr’s request for assistance in obtaining documents necessary to rebut the presumption.” 27 Vet.App. 124, 133 (2014). Thus, the Veterans Court has recognized that it would be improper for the VA to both refuse assistance and invoke the presumption.
It is true that the VA will sometimes deny such requests when, for example, a request is made before an examination and there is no reason to suspect that an examiner is incompetent. See No. 1452787, 2014 WL 7740599, at *9 (Bd. Vet. App. Dec. 1, 2014). However, that does not prevent this information from being provided at a more appropriate time. Indeed, in at least five different cases where the veteran has requested the CV of his examiner, the VA has been directed to comply with this request. Nohr, 27 Vet.App. at 128; No. 1552016, 2015 WL 10004845, at *12 (Bd. Vet. App. Dec. 11, 2015); No. 1543733, 2015 WL 7875614, at *2 (Bd. Vet. App. Oct. 13, 2015); No. 1538484, 2015 WL 6939522, at *1350 *1-2 (Bd. Vet. App. Sept. 9, 2015); No. 1501503, 2015 WL 1194124, at *7-8 (Bd. Vet. App. Jan. 13, 2015). More importantly, the VA’s duty to assist requires it to consider a claimant’s request for further information, including information about an examiner’s competency. The scope of that duty, and including the circumstances and timing of when such information should be provided, is not before us in this case and I offer no view on when that duty requires the VA to supply an examiner’s CV when requested. It suffices to say that the duty to assist requires the VA “to make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant’s claim,” 38 U.S.C. § 5103A(a)(l), and, thus, it should not routinely require an order from the Board or the Veterans Court before such necessary information is provided.
In this case, it does not appear that Mr. Mathis ever requested information regarding the examiner’s qualifications. See Mathis v. McDonald, 643 Fed.Appx. 968, 969-71 (Fed. Cir.2016); see also Mathis v. McDonald, No. 2013-3410, 2015 WL 2415067, at *3 (Vet. App. May 21, 2015) (“Here, [Mr. Mathis] points to no evidence that relates to an objection to the February 2012 examiner on the basis of competence.”). In fact, he did not raise the issue of competency until his case was on appeal to the Veterans Court. Mathis, 643 Fed. Appx. at 970-71. Even in the absence of the presumption of competency, it would still be inappropriate for the Veterans Court or this court to adjudicate the factual question of an examiner’s competency in the first instance.
Similar procedural deficiencies existed in the cases that this petition calls into consideration. In Rizzo v. Shinseki, 580 F.3d 1288, 1290-91 (Fed. Cir. 2009), there is no mention of an attempt to procure information about the examiner’s qualifications; instead, the veteran simply challenged the VA’s failure to introduce affirmative evidence of his qualification. In Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed. Cir. 2010), the veteran requested information about the examiner’s qualifications and it was provided, but the veteran failed to challenge the examiner’s competency. In Sickels v. Shinseki, 643 F.3d 1362, 1365 (Fed. Cir. 2011), and Parks v. Shinseki, 716 F.3d 581, 586 (Fed. Cir. 2013), the veterans failed to request information about the VA examiners’ qualifications. Indeed, in Parks, we specifically declined to offer an “opinion on whether an ARNP experienced only in family medicine may be qualified to opine on causes of diabetes.” 716 F.3d at 586. We have approved a (rebuttable) presumption of competency, but we have not had occasion — and do not here have occasion — to address how the VA must fulfill its duty to assist, or other legal duties, when questions of competency arise. We have not upheld a denial of a claimant’s request for competency information where there was reason to question competency and the information was needed to answer the question. Meanwhile, as noted above, the Veterans Court and the Board have recognized such informational duties where competency is genuinely placed in issue.
It is also important to put the presumption of competency in context in other ways.
First, the dissent appears to conflate an examiner’s competence with the adequacy of the exam he performs. See Reyna Dissent at 1354, 1356 n.6. The dissent relies on Sickels to support its conclusion that “[t]his court has extended the presumption of competence to apply not only to examiners, but also to their reports.” Id. at 1356 n.6. But Sickels does not reach so far. Rather, Sickels simply concludes that the presumption of competency includes the presumption that an examiner was “suffi- *1351 eiently informed.” Sickels, 643 F.3d at 1365. Moreover, like the situation here, Sickels relied on the fact that the argument that the examiner was insufficiently informed was not raised before the Board. Id. at 1366. Accordingly, the Board was not required to “state reasons and bases demonstrating why the medical examiners’ reports were competent and sufficiently informed.” Id. Nowhere does Sickels hold that the presumption of competency extends to the examination report.
Therefore, apart from challenging an examiner’s qualifications, the veteran may hold the examiner to the separate standards that demand adequacy of the examiner’s opinion and examination. The law is clear that when the Board seeks the opinion of a medical expert, “that opinion must be adequate to allow judicial review.” D’Aries v. Peake, 22 Vet.App. 97, 104 (2008). Moreover, the opinion must rest on an examination, whether of the veteran or of medical records, adequate to support the opinion offered. See Barr v. Nicholson, 21 Vet.App. 303, 311 (2007) (“[0]nee the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided.”). “A medical opinion is adequate when it is based upon consideration of the veteran’s prior medical history and examinations and also describes the disability in sufficient detail so that the Board’s ‘evaluation of the claimed disability will be a fully informed one.’ ” Id. at 310 (quoting Ardison v. Brown, 6 Vet.App. 405, 407 (1994)).
The VA Manual also sets forth internal procedures aimed at producing adequate examination reports. The VA Manual provides that “[a] VA examination report submitted to the rating activity must be as complete as possible,” and specifically calls out that “[a] medical opinion [that] is not properly supported by a valid rationale and/or the evidence of record” is an example of a “deficienc[y] that would render an examination insufficient.” M21-1MR § III.iv.3.D.3.a. It then directs that if an examination is insufficient, it should be returned to the VA examiner or the contracted provider. Id. § III.iv.3.D.3.e.
As this law and guidance makes clear, whether an examiner is competent and whether he has rendered an adequate exam are two separate inquiries. Therefore, simply because an examiner has been presumed competent does not relieve him of his duty to provide an adequate report.
Second, the dissent suggests that the VA periodically engages unqualified examiners, and that the presumption insulates these examiners from any review. See, e.g., Reyna Dissent at 1355-56 (“In reviewing their reports, the Board has indicated that not every doctor is qualified to testify about every issue, and that some issues require special knowledge.”); id. at 1357 (“[The presumption] permits the Board to rely on opinions when it knows almost nothing about the person who prepared them. It almost entirely insulates the VA’s choice of medical examiners from review.”). However, VA regulations require that “competent medical evidence” be “provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions.” 38 C.F.R. § 3.159(a)(1). Examinations provided by the VA are generally conducted “by VA medical staff, VA contract providers, or non-VA care providers.” VHA Directive 1046 at 1 (Apr. 23, 2014). The VA Manual provides that “VA medical facilities (or the medical examination contractor) are responsible for ensuring that the examiners are adequately qualified.” M21-1MR § III.iv.3.D.2.b. Every examination report or Disability Benefits Questionnaire (DBQ) must contain the “signa *1352 ture, printed name and credentials, phone number and preferably a fax number, medical license number, and address” of the examiner, as well as his or her specialty, if a specialist examination is required. Id. Although Veterans Service Center employees are “not expected to routinely review the credentials of clinical personnel to determine the acceptability of their reports,” they must do so if “there is contradictory evidence of record.” Id.
Regardless, even if the VA sometimes selects “unqualified” examiners — an assertion not supported by any evidence[1] — the dissent overlooks the fact that a veteran can get access to information about his examiner’s qualifications. As noted above, in at least five different cases where the veteran has requested the CV of his examiner, the VA has been directed to comply with this request. See supra at 1349-50. Further, the VA Manual includes a section on “Questions About Competency and/or Validity of Examinations” and directs the VA to Nohr for “more information on a claimant’s request for information, or complaints, about a VA examination or opinion.” M21-1MR § III.ÍV.3.D.2.0.
The dissent emphasizes, however, that “[i]f a veteran asks for an examiner’s qualifications, the VA will not provide them unless it is ordered to do so by the Board, the Veterans Court, or this court.” Reyna Dissent at 1353. I do not believe that is correct, nor do I believe the dissent’s single citation to a Veterans Court decision proves this'point. This case involves only one instance where an order was required to release examiner qualifications, and it demonstrates nothing about whether the VA has willingly provided this information in the majority of other cases. In fact, it at most suggests that when the VA denies requests for examiner qualifications, the system is equipped to remedy these denials.
Finally, the dissent fails to appreciate the nature of the medical evidence used by the VA. Specifically, the VA may order a medical examination, but the agency is not required to provide a medical examination or opinion if the record already contains sufficient medical evidence for the VA to make a decision on the claim. See 38 U.S.C. § 5103A(d)(l). By the dissent’s account, the competency of the doctors that performed any examinations contained in this “sufficient medical evidence,” which may be decades old in any given case, would need to be established before the VA may rely on it to make a decision on the claim.
The VA provides over 1 million disability evaluations yearly and in 2015 alone, the Veterans Health Administration completed 2,899,593 individual disability benefits questionnaires and/or disability examination templates. Resp. Br. at 8. The dissent has provided no guidance as to how the elimination of this limited presumption would work with regard to the millions of disability evaluations that have already been provided and form the basis for the continuing evaluation of the millions of pending claims for benefits. Would the Secretary be required to provide an affidavit or some other supporting evidence of the examiner’s competence before the Re *1353 gional Office or the Board could rely on that examination report? Would the Secretary have to appoint a specialist for each particular ailment a veteran alleges, as Mathis implies would be necessary? If so, that will create an incredible burden and may impair the operations of the VA, a result that will negatively impact veterans. Consequently, this court should not revise a procedure that is one small piece of a very complicated and long process, especially in a case that does not demonstrate a problem with the use of that procedure.
I am certainly sympathetic to the concerns raised regarding the presumption of competency, and its potential, for misuse by the VA. The Secretary should be mindful of its obligations and not reflexively rely on a presumption of competency. But our review is limited and I see no legal impediment to a rebuttable presumption of competency as long as it is properly confined and consistent with the Secretary’s other legal obligations. Thus, I respectfully concur in the denial of rehearing en banc.

. The dissent’s sole support for this assertion is Krugman v. Dep’t of Veterans Affairs, a whistleblower case from the Merit Systems Protection Board in which the employee was fired from the VA because, among other things, he refused to perform compensation and pension examinations. Reyna Dissent at 1355 n.3 (citing 645 Fed.Appx. 1000, - (Fed. Cir. 2016)). As a defense to the agency’s removal action, the employee asserted that he refused to conduct examinations because he thought that he was not competent to perform examinations. However, the VA never found him incompetent, nor did any claimants ever challenge his competency. Therefore, this case does not demonstrate that the VA hires unqualified examiners.