NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

Decided: April 1, 2016

---

MARK RYAN LIPPMAN, The Veterans Law Group, La Jolla, CA, argued for claimant-appellant.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; Y. KEN LEE, SAMANTHA ANN SYVERSON, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

———————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Concurring opinion filed by *Circuit Judge* REYNA.

O'MALLEY, *Circuit Judge.*

Appellant Freddie H. Mathis ("Mathis") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a Board of Veterans' Appeals ("Board") decision denying service connection for sarcoidosis, a pulmonary condition. *Mathis v. McDonald*, No. 13-3410, 2015 U.S. App. Vet. Claims LEXIS 654 (Vet. App. May 21, 2015). Because we are bound by this court's controlling precedent establishing a presumption of competency for VA medical examiners, we affirm.

## BACKGROUND

Mathis served on active duty in the U.S. Air Force from August 1980 to August 2002. According to private treatment records, Mathis was diagnosed with sarcoidosis in September 2009.[1] He filed a claim for service connection the following month. After a VA regional office ("RO") denied his claim in March 2010, Mathis appealed his case to the Board.

The RO had determined that certain of Mathis's service treatment records ("STRs") had become unavailable.

———————————

[1] Sarcoidosis is "a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1668 (32d ed. 2012).

In March 2011, in order to compensate for his missing STRs, Mathis and his ex-wife testified at a Decision Review Officer (DRO) hearing. During the hearing, Mathis testified that his sarcoidosis began during the late 1990s (i.e., the last few years of his active duty) and that, during his active military service, he experienced weakness, fatigue, and shortness of breath. He stated that he was treated for these symptoms while in active service. He also testified that his sarcoidosis may be the result of environmental exposures while he was stationed in Italy. Mathis's ex-wife testified that his health declined during their marriage while he was on active duty. Finally, Mathis submitted two statements from veterans who were in the Air Force with him and described his shortness of breath during his active service and since that time.

Based on these lay assertions, the VA obtained the medical opinion of VA medical examiner John K. Dudek in February 2012. Dr. Dudek reviewed Mathis's claims file, including the hearing transcript and lay statements, but did not examine Mathis or perform any tests. Dr. Dudek concluded that Mathis's sarcoidosis was less likely than not incurred in or caused by Mathis's service. The examiner found that there was no evidence to support the conclusion that Mathis's pulmonary symptoms while in service were related to sarcoidosis. The examiner stated that while he was "not doubting the validity" of the lay statements, the sarcoidosis was diagnosed seven years after service and nothing indicated the sarcoidosis existed within one year of service. Joint Appendix ("J.A.") 47. Moreover, he suggested that, if Mathis had significant breathing issues post service, "one can assume he would have sought medical care." *Id.*

In June 2013, the Board issued a decision on Mathis's claim. The Board made factual findings that Mathis's sarcoidosis "was not manifested during his military service, is not shown to be causally or etiologically related

to his active military service, and is not shown to have manifested to a degree of 10 percent or more within one year from the date of separation from the military." J.A. 51. The Board recognized that the VA has a duty to assist, which includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim. Here, the Board noted that only a VA medical opinion, rather than a medical examination, had been afforded to Mathis, but, nevertheless, found that the VA had met its duty by making all reasonable efforts to obtain evidence necessary to substantiate Mathis's claim.

The Board then stated that entitlement to service connection for a particular disorder requires (1) evidence of the existence of a current disorder, and (2) evidence that the disorder resulted from a disease or injury incurred in or aggravated during service. 38 U.S.C. §§ 1110, 1131. The Board found that, although Mathis satisfied the first element, he failed to establish that the second was met. Although the Board acknowledged that Mathis and his friends and family were competent and credible to report that he experienced fatigue and shortness of breath during and since his military service, it held that these laypersons were not competent to assert a causal link between these symptoms and the sarcoidosis. The Board then found that all of the other evidence in the claims file supported the VA's denial of service connection. The only medical opinion contained in the claims file, that of VA examiner Dr. Dudek, found no nexus between Mathis's service and sarcoidosis. And Mathis testified at the DRO hearing that he did not seek treatment and did not receive a diagnosis of sarcoidosis until 2009, seven years after his active service ended. The Board, therefore, denied Mathis's claim for service connection.

Mathis then appealed to the Veterans Court. Mathis argued to the court that: (1) the Board erred in relying on an inadequate VA examiner opinion; and (2) the VA failed

to establish that the examiner was competent to provide an opinion in this case. The Veterans Court dispensed with Mathis's first argument, holding that the Board's finding that the VA examiner's opinion was adequate was not clearly erroneous. It further agreed with the Board that Mathis and his fellow service members were not competent to draw a conclusion as to the cause of his sarcoidosis.

As for Mathis's second argument, the Veterans Court noted that Mathis recognized legal authority that placed the burden on the claimant to challenge the competency of VA medical examiners. Nevertheless, Mathis argued that the VA failed to establish that Dr. Dudek, who specialized in family practice, was qualified to offer an expert opinion in the field of pulmonology. The court held that though the presumption of competency is rebuttable, objecting to the examiner's competence was the first step to overcoming the presumption. Mathis conceded he had not objected before the Board, but stated that he "wishes to preserve for Federal Circuit appeal a challenge to the correctness of" the case law on this issue. *Mathis*, 2015 U.S. App. Vet. Claims LEXIS 654, at \*9. The Veterans Court held that the mere fact that the VA examiner was not a pulmonologist did not, by itself, render the opinion inadequate. Therefore, it affirmed.

Mathis timely appealed. This court has jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

In an appeal from the Veterans Court, we review all questions of law de novo. 38 U.S.C. § 7292(d)(1); *see Beraud v. McDonald*, 766 F.3d 1402, 1405 (Fed. Cir. 2014) (citing *Rodriguez v. Peake*, 511 F.3d 1147, 1152 (Fed. Cir. 2008)). Absent a constitutional issue, however, we lack jurisdiction to review factual determinations or the application of law to the particular facts of an appeal from the Veterans Court. 38 U.S.C. § 7292(d)(2); *see Guillory v.*

*Shinseki*, 603 F.3d 981, 986 (Fed. Cir. 2010); *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004).

The only issue on appeal is a legal one: whether this court should disavow the presumption of competency as it applies to VA medical examiners. Recently, and over only a short span of time, this court has developed a line of authority applying the presumption of competency to VA medical examiners and their medical opinions in veteran's benefits cases.

*Rizzo* was the first case. There, a veteran appealed a denial of service-connection for an eye disability that he alleged resulted from his exposure to ionizing radiation during his service in the Air Force. The testimony of a Ph.D. in radiation physics offered by the veteran and that of a VA department expert were in conflict. *Rizzo v. Shinseki*, 580 F.3d 1288, 1290 (Fed. Cir. 2009). The veteran argued that the Veterans Court incorrectly held that the Board could assume the qualifications of the VA expert. We adopted the reasoning of the Veterans Court in *Cox v. Nicholson*, 20 Vet. App. 563, 568 (2007), which held that "the Board is entitled to assume the competence of a VA examiner" based on the presumption of regularity. *Rizzo*, 580 F.3d at 1290. Thus, we held that, "where as here, the veteran does not challenge a VA medical expert's competence or qualifications before the Board, this court holds that VA need not affirmatively establish that expert's competency." *Id.*

A year later, we expanded on *Rizzo* in *Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010), finding that case "controlling" on the issue of whether the Board improperly relied on the department's medical witness without establishing his qualifications. We further clarified that, in order to challenge a VA medical examiner's qualifications, a veteran must do more than merely request them. This is because "[a] request for information about an expert's qualifications . . . is not the same as a

challenge to those qualifications. Indeed, one may assume that litigants who are told an expert witness' qualifications frequently may conclude that there is no reasonable basis for challenging those qualifications." *Id.* at 1306. We stated, moreover, that, in order to give the trier of fact the ability to determine the validity of a challenge to the expertise of a VA expert, a challenge "must set forth the specific reasons why the litigant concludes that the expert is not qualified to give an opinion." *Id.* at 1307.

These variations on a theme continued the following year when we issued *Sickels v. Shinseki*, 643 F.3d 1362 (Fed. Cir. 2011). 38 U.S.C. § 7104(d)(1) requires the Board's decisions to include a written statement of the reasons or bases for its findings and conclusions. In *Sickels*, the veteran argued that the Board violated § 7104(d)(1) by not providing a written explanation for its implicit conclusion that a VA medical opinion was sufficiently informed. We held that, "[w]hile we did not explicitly state so in *Rizzo*, it should be clear from our logic that the Board is similarly not mandated by section 7104(d) to give reasons and bases for concluding that a medical examiner is competent unless the issue is raised by the veteran. To hold otherwise would fault the Board for failing to explain its reasoning on unraised issues." *Sickels*, 643 F.3d at 1366.

Finally, and most recently, we applied the presumption of competency in *Parks v. Shinseki*, 716 F.3d 581, 584 (Fed. Cir. 2013). There, the VA selected an advanced registered nurse practitioner (ARNP) to determine whether there was a relationship between a veteran's service and several health conditions, including diabetes. We found that the VA was required to rely only on "competent medical evidence," which is defined by VA regulations as "evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." 38 C.F.R.

§ 3.159(a)(1).   We then stated, however, that, "[i]n the case of competent medical evidence, the VA benefits from a presumption that it has properly chosen a person who is qualified to provide a medical opinion in a particular case." *Parks*, 716 F.3d at 585 (citing *Sickels*, 643 F.3d at 1366).   We explained that the presumption furthered the policy of preventing "[r]epeated unnecessary remands for additional evidence [that may] complicate many cases and lead to system-wide backlogs and delays." *Id.*   We addressed, moreover, the veteran's argument that under *Comer v. Peake*, 552 F.3d 1362, 1363, 1369 (Fed. Cir. 2009), the record must be construed sympathetically in favor of *pro se* veterans.   We held that, because the veteran failed to raise an objection before the Board that anything was improper with the VA's selection of an ARNP or the particular ARNP on his case, *Comer* did not apply.   Thus, we held that the Board was not required to read into the record an argument that was never made.

Turning to the case at bar, Mathis recognizes that we have endorsed the presumption of competency, but, nevertheless, "asks th[is court] to disapprove *Rizzo v. Shinseki*, 580 F.3d 1288 (Fed. Cir. 2009) and its progeny." Appellant Br. 6 (citing Fed. Cir. R. 35(a)(1)).   He says that *Rizzo* came as a blow to *pro se* claimants and that applying the presumption "shift[s] the VA disability benefits program towards an adversarial adjudicatory model and . . . degrade[s] the disability evaluation process [by] hav[ing] unqualified medical personnel provide expert medical opinions." Appellant Br. 3.

Mathis raises several arguments against the application of the presumption of competency.   He argues that the presumption of regularity, which underlies the presumption of competency, should only apply to routine, non-discretionary, and ministerial procedures.   As such, he maintains, it is improper to apply the presumption to VA medical examiners where the procedures for their selection and assignment are discretionary and have not

been shown to bear indicia of reliability. He contends that the presumption of competency lies in contradiction to Congress's articulated desire to create a nonadversarial adjudicatory system for veterans. *See Vanerson v. West,* 12 Vet. App. 254, 260 (1999) ("[T]he legislative history of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), indicates that adversarial concepts of adjudication were not to be adopted into the VA adjudication system."). According to Mathis, the presumption of competency also unfairly puts the burden on the veteran—an unsophisticated party who cannot readily access the relevant information—to raise a specific objection to an expert's testimony. Finally, he argues that it would not be unduly burdensome for the government to establish the qualifications of its examiners affirmatively.

Mathis's presumption of regularity argument in particular presents some legitimate concerns. *Rizzo* invoked three cases in support of its holding: *Cox,* 20 Vet. App. at 568, *Miley v. Principi,* 366 F.3d 1343, 1347 (Fed. Cir. 2004), and *Butler v. Principi,* 244 F.3d 1337, 1338 (Fed. Cir. 2001). None of these cases, however, provides a solid foundation for the broad application of the presumption of regularity to medical examiners. *Cox* relied on *Hilkert v. West,* 12 Vet. App. 145, 151 (Vet. App. 1999), a Veterans Court case that merely briefly noted that the Board in that case implicitly accepted the VA physician's competency and the claimant had failed to show that such reliance was in error.

*Miley* was concerned with whether the VA RO timely mailed the veteran a notice of its decision, thus triggering the veteran's time to file an appeal. We stated that the presumption of regularity could be employed, "in the absence of evidence to the contrary, [to establish] that certain *ministerial* steps were taken in accordance with the requirements of law." *Miley,* 366 F.3d at 1347 (emphasis added). We held that the presumption of regularity applies where "the Board finds that [a] decision notice

was designated to be mailed along with other documents that were in fact [timely] mailed. . . . *In that setting*, the presumption of regularity may properly be invoked . . . ." *Id.* at 1347 (emphasis added). Thus, the holding of that case was limited to certain ministerial steps, and there was no discussion of whether it would be appropriate to apply the presumption to VA medical examiners.

Finally, *Butler* stated that, the "'presumption of regularity' supports official acts of public officers" and holds that, "[i]n the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties." 244 F.3d at 1340. It, too, however, pertained only to the presumption of regularity as it applied to the VA's mailing of notices to veterans under 38 U.S.C. § 5104.

The presumption of regularity, like the hearsay exception for business records in the Federal Rules of Evidence, has "at [its] root a showing that the [result] was the product of a consistent, reliable procedure." *Posey v. Shinseki*, 23 Vet. App. 406, 410 (2010). Thus, the presumption should be predicated on evidence that gives us confidence that a particular procedure is carried out properly and yields reliable results in the ordinary course. As the Third Circuit has recognized, "[m]ost presumptions have come into existence primarily because judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of fact A until the adversary disproves it." *Malack v. BDO Seidman, LLP*, 617 F.3d 743, 749 (3d Cir. 2010) (quoting *McCormick on Evidence* § 343 (John W. Strong ed. 5th ed. 1999)).

It is no wonder, therefore, that the presumption of regularity has been applied repeatedly to the government's mailing of certain types of notices. *See e.g.*, *Crain v. Principi*, 17 Vet. App. 182, 186 (2003) ("the law presumes the regularity of the administrative process");

*Davis v. Principi*, 17 Vet. App. 29, 37 (2003) (applying a "presumption of regularity of mailing"); *Schoolman v. West*, 12 Vet. App. 307, 310 (1999) ("'clear evidence to the contrary' is required to rebut the presumption of regularity, i.e., the presumption that notice was sent in the regular course of government action"). In such cases, the acts at issue are typically ministerial, routine, and non-discretionary.[2]

The Veterans Court has displayed caution and hesitance towards expanding the presumption of regularity to new contexts. In *Kyhn v. Shinseki*, 26 Vet. App. 371, 374 (2013), for example, the Veterans Court remanded a case to the Board for it to assess, in the first instance, whether (1) the VA's duty to notify a veteran of his upcoming medical examination was actually fulfilled, or (2) the VA is entitled to a presumption of regularity in its mailing of notices of scheduled VA examinations. *Id.* Thus, though *Rizzo* already had established the presumption of competency and the presumption of regularity had long been applied to certain VA mailing procedures, the court still saw a need for a separate evaluation of whether the presumption was proper with respect to the mailing of notices to veterans regarding their VA examinations. Nowhere in the *Rizzo* line of cases, however, did either the Veterans Court or this court perform an analysis to verify that the procedures attending the selection and assign-

---

[2]     *See Latif v. Obama*, 677 F.3d 1175, 1207 (D.C. Cir. 2012) (Tatel, J., dissenting) (finding that "every case applying the presumption of regularity" has "in common: actions taken or documents produced within a process that is generally reliable because it is, for example, transparent, accessible, and often familiar. As a result, courts have no reason to question the output of such processes in any given case absent specific evidence of error.").

ment of VA examiners are, in fact, regular, reliable, and consistent.

In fact, Mathis argues that the VA's procedure for selecting qualified examiners is inherently unreliable because the VA broadly recommends assigning generalists except in unusual, ill-defined cases. The VA Adjudication Procedures (M21-Manual) states that examinations routinely performed by specialists include hearing, vision, dental, and psychiatric examinations, but otherwise instructs its staff to "[r]equest a specialist examination only if it is considered essential for rating purposes," for example "if an issue is unusually complex[, ] if there are conflicting opinions or diagnoses that must be reconciled, or [ ] based on a BVA remand." VA Adjudication Procedures Manual, M21-1MR, Part III, Subpart iv, ch. 3, § A(6) (change date July 30, 2015). Furthermore, a VA fast letter directed to "All VA Regional Offices and Centers," states: "[p]lease note that a specialist is only required in limited situations . . . . For all other types of examinations, a generalist clinician may perform the examination. For example, an office may order a cardiac examination, but it should not generally request that a cardiologist (a specialist) conduct it." Veterans Benefits Administration Fast Letter 10-32 (September 1, 2010). Mathis argues that this guidance fails to ensure to a high degree of certainty that the VA examiner assigned to a given case is able to provide a "competent medical opinion" in accordance with 38 C.F.R. § 3.159(a)(1). In his view, a generalist is not competent to provide an expert opinion on a condition like sarcoidosis absent a showing of education, training, or experience relevant to such a condition.

The government attempts to reassure us that the veteran may obtain a specialist's opinion where the government determines that such an opinion is "necessary to make a decision on the claim," 38 U.S.C. § 5103A(d). But the process by which the VA appoints examiners for a

particular case remains unclear. Without this information, we cannot tell whether the procedures in question are, in fact, regular, reliable, and consistent.

We need not—and cannot—resolve this debate. We lack jurisdiction to make factual findings on appeal regarding the competency of the particular examiner employed by the VA in this case and are bound by clear precedent to presume that Dr. Dudek was competent to render the opinion he did. We note, however, that, though there may be a fair basis to criticize the *Rizzo* line of cases, there exists a practical need for an administrable rule, given the volume of claims the VA is charged with processing. Replacing the presumption established by *Rizzo* would require a concrete, clear standard for determining the sufficiency of an examiner's qualifications to conduct an examination or provide a medical opinion.

CONCLUSION

The Veterans Court did not err in its interpretation of our precedent. We, therefore, affirm.

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

REYNA, *Circuit Judge*, concurring.

I write separately to state my view that experience has shown that presuming the competence of individuals who write medical opinions in veterans cases has produced results inconsistent with the statute. My conclusion is that the entire court should review the case law concerning the presumption of competence with the objective of eliminating it.

The presumption of competence has delegitimized the process of adjudicating veterans' entitlement to disability benefits. Under the presumption, no Board or judicial review of a VA examiner's qualifications occurs unless the

veteran makes a specific objection to the examiner's qualifications while the case is before the Board. The veteran is hobbled in making a specific objection because the VA does not by default disclose any information about the examiner's qualifications other than his or her credentials, such as "MD." If a veteran asks for an examiner's qualifications, the VA will not provide them unless it is ordered to do so. The Board has at times refused to order the VA to do so because the veteran has not raised a specific objection to the examiner's competence. This creates a catch-22 situation in which the veteran must have grounds to object to an examiner's competence before the veteran can learn the examiner's qualifications.

The presumption of competence was created based on the presumption of regularity, and it was unprecedented to apply the presumption of regularity to a process such as determining whether a nurse is qualified to provide an opinion on a particular issue. This court has held that the Veterans Court lacks jurisdiction to create such presumptions, and so this court should not have upheld the Veterans Court's creation of a presumption in *Rizzo*. Applying the presumption of regularity requires evidence that a process is regular, and such evidence has not been presented. Even if the VA's process for selecting examiners was "regular" when the presumption was established in *Rizzo*, the process has continued to evolve, and the VA does not always successfully follow its own guidelines for selecting examiners. The circumstances when this court established the presumption suggest that these negative consequences were unanticipated.

Eliminating the presumption will require the VA to provide the Board with evidence that an examiner "is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions" on the issue that the examiner is testifying about. The VA could meet this requirement by attaching an examiner's curric-

ulum vitae (CV) to her report, and, if necessary, having her state in her report why she is qualified.

The Panel Opinion implies that in order to overturn *Rizzo*, there must first be established a clear standard for determining whether an examiner is competent. Op. at 13. It is not clear that this is the case. Assuming that such a standard would be necessary, its development would be the responsibility of the Board or the Veterans Court, and not this court.

## DISCUSSION

The VA's adjudicatory process for disability benefits "is designed to function throughout with a high degree of informality and solicitude for the claimant." *Henderson v. Shinseki*, 562 U.S. 428, 431 (2011) (citation omitted). The "system is constructed as the antithesis of an adversarial, formalistic dispute resolving apparatus." *Forshey v. Principi,* 284 F.3d 1335, 1360 (Fed. Cir. 2002) (Mayer, C.J., dissenting) (majority overruled by statute). "The purpose is to ensure that the veteran receives whatever benefits he is entitled to, not to litigate as though it were a tort case." *Id.*

The VA must assist veterans in obtaining evidence needed to support disability benefits claims. 38 U.S.C. § 5103A(a)(1). At times this includes providing a medical examination or obtaining a medical opinion. *Id.* at § 5103A(d).

The presumption of competence applies both to VA examiners who conduct an examination of a veteran before preparing a report and to VA examiners who only examine medical records or other evidence before preparing a report.[1] The presumption also applies to the reports

---

[1] *See, e.g.*, *Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (Fed. Cir. 2009) (examiners who prepared opinions with-

themselves. *Sickels*, 643 F.3d at 1366 ("The argument that a VA medical examiner's opinion is inadequate is sufficiently close to the argument raised in *Rizzo* that it should be treated the same.")[2]

Under the presumption, a veteran must set forth *specific reasons* why the veteran believes an examiner is not qualified before the VA has to provide any evidence regarding the examiner's qualifications. *Bastien v. Shinseki,* 599 F.3d 1301, 1307 (Fed. Cir. 2010). If a veteran fails specifically object to an examiner's compe-

---

out examining veteran were presumed competent); *Parks v. Shinseki*, 716 F.3d 581, 583 (Fed. Cir. 2013) (same); *Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011) (same); *Johnson v. Shinseki*, 440 F. App'x 919, 922 (Fed. Cir. 2011) (examiner who examined veteran was presumed competent).

[2]   Exactly how the presumption of competence applies to examiners' reports has not been fully established. *See, e.g.*, *Whitehead v. Shinseki*, No. 10-4166, 2012 WL 2054875, at *5 (Vet. App. June 8, 2012) ("*Sickels* does not, as the Secretary argues, 'entitle[ ] [the Board] to presume the adequacy of the VA medical examiner's opinion.' Secretary's Br. at 17–18. The Board is decidedly *not* entitled to presume the adequacy of a VA examination— that is a question of fact to be determined in each case where a VA medical examination was provided."); *but see, e.g.*, *Woods-Calhoun v. McDonald*, No. 13-3507, 2015 WL 5449888, at *5 (Vet. App. Sept. 17, 2015) (applying the presumption of competence in analysis determining whether a report is adequate); *Brown v. McDonald*, No. 14-0464, 2015 WL 691200, at *5 (Vet. App. Feb. 19, 2015) (same); *Felix v. Gibson*, No. 13-2977, 2014 WL 3609630, at *1 (Vet. App. July 23, 2014) (same); *Irish v. Shinseki*, No. 11-1426, 2012 WL 1739712, at *2 (Vet. App. May 17, 2012) (same).

tence while his case is before the Board, any such challenge is waived. *Parks*, 716 F.3d at 586; *see also, e.g.*, *Nohr v. McDonald*, 27 Vet. App. 124, 132 (2014).

## The VA Generally Presents No Evidence Regarding an Examiner's Qualifications

As the VA is not obligated to provide evidence regarding an examiner's qualifications, it does not do so. Under the Adjudication Manual of the Veterans Benefits Administration, M21-1MR ("M21-1MR" or "VA Manual"), an examiner who prepares a report includes only her name, address, credentials (*e.g.*, MD, PA, NP, MA, LCPG, or LCSW), and her phone, fax, and medical license numbers. M21-1MR § III.iv.3.D.2.b.[3] Her specialty is provided "if a specialist examination is required or requested."[4] *Id.*

If a veteran seeks information about an examiner's qualifications, the VA will not provide such information unless it is ordered to do so. In *Nohr v. McDonald*, 27 Vet. App. 124, 128 (2014), a veteran requested an examiner's CV. The Board denied the request, and the Secretary's counsel argued before the Veterans Court that the request was "a fishing expedition." *Id.* at 132.[5]

---

[3] M21–1MR is available at Department of Veterans Affairs, *KnowVA Knowledge Base* (last visited Mar. 28, 2016), http://www.knowva.ebenefits.va.gov.

[4] This guideline is not always followed. *See, e.g.*, No. 1320853, 2013 WL 4450861, at *2 (Bd. Vet. App. June 27, 2013) (Board requested specialist but it was unclear whether examiner had a specialty). Under 38 C.F.R. § 20.1301, Board decisions such as this one are issued without titles, as personal identifiers are redacted.

[5] *See also, e.g.,* No. 1543733, 2015 WL 7875614, at *2 (Bd. Vet. App. Oct. 13, 2015); No. 1501503, 2015 WL 1194124, at *7–8 (Bd. Vet. App. Jan. 13, 2015); No.

The Veterans Court found that the Board erred in denying the veteran's request because the veteran had identified an ambiguous statement in the examiner's report that suggested "there may have been some irregularity in the process" of selecting the examiner. *Id.* at 132. The Veterans Court explained that, under those circumstances, the Board could not deny the veteran's request for a CV. *Id.* at 133.

In one case, the Board interpreted *Nohr* as meaning that a veteran must rebut the presumption of competence before the veteran is entitled to receive information about an examiner's qualifications. No. 1452787, 2014 WL 7740599 at *8 (Bd. Vet. App. Dec. 1, 2014). Distinguishing *Nohr*, the Board rejected a veteran's request for an examiner's CV because it was made before the examiner provided her opinion, so there was no evidence "sufficient . . . to rebut the presumption of administrative regularity." *Id.* at *8–9. Since *Nohr*, it appears that the Board has ordered the VA to provide a veteran with an examiner's CV in five cases.[6]

---

1452787, 2014 WL 7740599, at *9 (Bd. Vet. App. Dec. 1, 2014).

This court in *Bastien* stated that the VA provided an examiner's qualifications when a veteran's wife requested them. 599 F.3d at 1306. This seems to be a mistake, as both of the veteran's appeal briefs state that, despite requests, the VA did not provide the qualifications. Brief for Claimant-Appellant at 11, 2009 WL 2610099 and Reply Brief at 3, 10–11, 2009 WL 4829105. The VA's brief does not deny this, and it cites the same "public profile" the veteran's wife found for an examiner's qualifications. Brief of Respondent-Appellee at 6 n.7 & 12–13, 2009 WL 4248807.

[6] *See* No. 1552016, 2015 WL 10004845 at *12 (Bd. Vet. App. Dec. 11, 2015); No. 1543733, 2015 WL 7875614

The VA Manual provides regional offices with guidelines for responding to veteran "requests for information about the examiner's qualifications." M21–1MR § III.iv.3.D.2.m. The Manual does not suggest that a regional office should respond to such a request by actually providing an examiner's qualifications. *Id.* If a veteran submits interrogatories to a regional office, it is instructed "do not complete and return the document" and "do not refer it to the examiner." *Id.*[7]

### The Presumption Makes the Competence of VA Examiners Effectively Unreviewable

Since the presumption was created, Board or judicial review of examiner qualifications rarely occurs. Veterans regularly make "general" objections to an examiner's competence, but not "specific" objections, so the Board does not review the examiner's competence.[8] Veterans likely fail to make "specific" objections because they have no information regarding an examiner's qualifications.

---

at *2 (Bd. Vet. App. Oct. 13, 2015); No. 1538484, 2015 WL 6939522 at *1–2 (Bd. Vet. App. Sept. 9, 2015); No. 1531027, 2015 WL 5212552 at *1 (Bd. Vet. App. July 21, 2015); No. 1501503, 2015 WL 1194124 at *7–8 (Bd. Vet. App. Jan. 13, 2015).

[7] Because of the presumption, the VA does not have records regarding examiners' qualifications. Appellee Br. at 17.

[8] *E.g.*, No. 1539156, 2015 WL 6940254 at *4 (Bd. Vet. App. Sept. 14, 2015); No. 1526395, 2015 WL 4690503, at *6–7 (Bd. Vet. App. June 22, 2015); No. 1451247, 2014 WL 7502140, at *5–6 (Bd. Vet. App. Nov. 19, 2014); No. 1446634, 2014 WL 6876771, at *5–6 (Bd. Vet. App. Oct. 21, 2014); No. 1444538, 2014 WL 6874328, at *4–5 (Bd. Vet. App. Oct. 7, 2014); No. 1428938, 2014 WL 3961243, at *3–4 (Bd. Vet. App. June 26, 2014).

Even if a veteran sufficiently challenges an examiner's qualifications, the Board has often failed to consider whether the examiner was qualified.[9]

If a veteran does not sufficiently object, the Board only needs to consider an examiner's competence when the examiner unambiguously states in her report that she is not competent. This occurred in *Wise v. Shinseki*, 26 Vet. App. 517 (2014). In *Wise*, a veteran's wife sought to show that the veteran's service-connected post-traumatic stress disorder ("PTSD") had contributed to his heart disease. *Id.* at 521. Opposing the claim, the VA submitted the report of a cardiologist who stated in her report that she had no training in psychiatry other than a month-long rotation while in medical school over 25 years earlier, that she had little experience treating veterans, and that the majority of the documents she had received for review were psychiatry-related. *Id.* at 522. She called herself "a relative lay person" with regard to psychiatry, but she opined that the veteran's PTSD symptoms were not very severe and were unlikely to have caused his heart disease. *Id.* at 522–23.

---

[9]  *See, e.g.*, *Temples v. McDonald*, No. 14-1604, 2015 WL 4169190, at *3 (Vet. App. July 10, 2015) (finding that a veteran had sufficiently challenged an examiner's qualifications to the Board and remanding for the Board to analyze the examiner's competence); *Learman v. McDonald*, No. 14-0148, 2015 WL 1622162, at *3–5 (Vet. App. Apr. 13, 2015) (same); *Acosta v. Shinseki*, No. 12-3433, 2014 WL 1577773, at *6 (Vet. App. Apr. 22, 2014) (same); *Kanuch v. Shinseki*, No. 11-3711, 2013 WL 1200607, at *4–5 (Vet. App. Mar. 26, 2013) (same). In these cases, although specific objections were raised, the VA argued before the Veterans Court that the veteran did not specifically object before the Board and had waived the issue. *Id.*

At the Veterans Court, the veteran challenged the Board's decision to rely on the cardiologist's opinion. *Id.* at 524. The Veterans Court found that the presumption of competence did not attach when "evidence of record creat[ed] the appearance of irregularity." *Id.* at 526–28.

In contrast, a merely ambiguous disclaimer of competence will not prevent challenges to an examiner's competence from being waived when they are not raised before the Board. *Johnson v. McDonald*, No. 14-1587, 2015 WL 4075155, *7 (Vet. App. July 6, 2015).

Under the Presumption, the Board Cannot Fairly Weigh the Probative Value of an Examiner's Report

That an examiner is qualified to provide a report should be a "threshold consideration" before her report is considered by the Board. *Nieves-Rodriguez v. Peake*, 22 Vet. App. 295, 304 (2008). While "most of the probative value of a medical opinion comes from its reasoning," *id.,* an examiner's qualifications should not be disregarded.

The weight accorded to an examiner's report should depend in part on the examiner's knowledge and experience, including whether the examiner has "specific expertise in the relevant specialty." *Itliong v. Shinseki*, No. 09-0886, 2011 WL 4485886, at *2 (Vet. App. Sept. 29, 2011); *see also, e.g., Black v. Brown*, 10 Vet. App. 279, 284 (1997); No. 1452787, 2014 WL 7740599, at *12 (Bd. Vet. App. Dec. 1, 2014).

When *private examiners* provide opinions *on behalf of* veterans, the Board is "unable to assess [their] experience or qualifications to render an opinion" when they do not include information regarding their specialty or a CV. No. 1512074, 2015 WL 2161715, at *16 (Bd. Vet. App. Mar. 20, 2015). *See also, e.g.,* No. 9919708, 1999 WL 33869596, at *1 (Bd. Vet. App. July 19, 1999) (noting that, without a CV or other evidence showing a veteran's physician's qualifications, "the Board is unable to deter-

mine the degree of weight or probative value that may be attached to [her] opinion.").

VA guidelines for responding to complaints that an examiner was unqualified state that "where an examiner is basically competent, matters like specialty, Board certification, experience and other related considerations will merely be considerations in determining probative value of the examination or opinion." M21-1MR § III.iv.3.D.2.m. In reality, these factors will *almost never* be considered in determining the probative value of a VA examiner's opinion.

Determining whether an opinion is adequate and weighing its probative value solely on its analysis without knowledge of its author's qualifications can lead to absurd results. Because the analysis turns on an author's skill in opinion-writing rather than her skill in medicine, a skilled opinion-writer could write persuasive opinions about issues she is entirely unqualified to opine about.

Veterans have no opportunity to confront VA examiners, such as through cross-examination, so "in many cases the most effective way of countering a questionable opinion [is] to offer a contrary opinion with more support in the medical literature or from other medical experts." *Gambill v. Shinseki*, 576 F.3d 1307, 1318–19 (Fed. Cir. 2009) (Bryson, J., concurring). A veteran's ability to advance a contrary opinion is fettered when the experience, educational background, and training of the examiner are unknown. Even if a veteran finds *the* preeminent expert on her specific disability to provide an opinion supporting her claim, because the record is silent as to the VA examiner's qualifications, the Board or any court rarely has the ability to weigh their relative qualifications in evaluating their competing opinions.

For example, in *D'Auria v. McDonald*, a veteran argued that the Board erred in according more weight to a VA examiner's opinion than the veteran's physician's

opinion. No. 14-3224, 2015 WL 5307462, at *2 (Vet. App. Sept. 11, 2015). At the Veterans Court, the *pro se* veteran's appeal brief said "[the veteran's physician's] credentials are impeccable. What credentials and specialty does your VA examiner hold?" *Id.* The Court explained that VA examiners are presumed competent, the veteran had not challenged the examiner's qualifications at the Board, and so the Board did not have to evaluate his or her qualifications before relying on his or her report. *Id.*

Occasionally, the Board still weighs the probative value of competing reports on the basis of credentials. In one recent case, the Board afforded more probative value to the veteran's physician's opinion, explaining that "a relevant difference in the level of expertise and professional credentials of the two examiners [existed], as the VA examiner was a nurse practitioner and the private examiner was a licensed physician with an extensive CV showing years of experience in occupational and environmental medicine, [including] the types of workplace injuries from which the Veteran alleged his in-service right knee trauma originated." No. 1504782, 2015 WL 1600923, at *5 (Bd. Vet. App. Feb. 2, 2015). But the presumption of competence discourages the Board from finding a VA examiner anything less than perfectly competent. *Parks*, 716 F.3d at 585 (the presumption applies to nurse practitioners); *see also*, *e.g.*, No. 1549456, 2015 WL 9698285 at *1 (Bd. Vet. App. Nov. 23, 2015).

The Board eschews wrongly awarding benefits by assigning undue weight to *favorable* medical opinions. No. 1452787, 2014 WL 7740599, at *5 (Bd. Vet. App. Dec. 1, 2014). It should not assign undue weight to *unfavorable* opinions either. It cannot fairly weigh an opinion while knowing almost nothing about its author's qualifications.

The Presumption Creates a Due Process Problem

The VA's duty to assist veterans includes providing an examination or report by a competent examiner, when

needed.  38 U.S.C. § 5103A.  As a result of the presumption of competence, the burden to object to an examiner's competence is placed on the veteran, but the veteran is hindered in doing so.

A veteran's interest in disability benefits is protected by the Due Process Clause.  *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009).  The presumption of competence increases the risk of an erroneous deprivation of that interest.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Removing the presumption would help safeguard a veteran's right to an opinion or examination prepared or performed by a *qualified* examiner, and create only a minimal burden on the VA to provide evidence regarding the qualifications of its examiners.

"In the veterans' uniquely claimant friendly system of awarding compensation, breaches of the duty to assist are at the heart of due process analysis."  *Cook v. Principi*, 318 F.3d 1334, 1354 (Fed. Cir. 2002) (Dyk, J., concurring).  "If the Constitution provides no protection against the occurrence of such breaches, then the paternalistic interest in protecting the veteran is an illusory and meaningless assurance."  *Id.*

### The Interests the Presumption Serves Do Not Outweigh Its Disadvantages

The presumption serves to eliminate the VA's burden to produce evidence and reduce remands.  *Parks*, 716 F.3d at 585.  Without a presumption, the VA would need to provide the Board with evidence that an examiner satisfies the 38 C.F.R. § 3.159 requirement of being "qualified through education, training, or experience to offer medical diagnoses, statements, or opinions."  Yet, simply attaching an examiner's CV to his report would reveal the examiner's education, training, and experience.  Attaching a CV to his report is a task an examiner can easily handle.

Because the VA usually selects generalist examiners, an examiner's CV usually will not show that the examiner has any expertise in the subject of her report.[10] If a CV reveals that an examiner lacks such expertise, she can also explain in her report why she is qualified. Including such a statement would not be difficult for examiners. If an examiner prepares a statement describing why she is qualified to opine on cardiac issues, for example, she can likely reuse it the next time she opines on cardiac issues.

It appears that this court's *Rizzo* decision led the VA to change a practice of usually attaching an examiner's CV to his report. Before *Rizzo*, which issued in September 2009, it appears that Board orders remanding cases for medical examinations had instructed an examiner to append a CV to his report only about four times.[11] But after *Rizzo*, between March 2010 and September 2011, the Board included such an instruction in over two hun-

_____

[10] At argument, the Secretary's attorney stated "[i]n this case, [the VA examiner] was a general practitioner. Providing a CV would demonstrate that. . . . What Mr. Mathis [seeks] is something tailored to every single case, saying [the examiner's] exact experience with lung conditions, for instance, or heart conditions, or whatever it is. A CV is not going to cut the muster in this situation." Recording at 22:16, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/search/audio.html.

For discussion on the VA's use of generalist examiners, see infra at page 17.

[11] No 0802829, 2008 WL 4320116, at *2 (Bd. Vet. App. Jan. 25, 2008); No. 0432514, 2004 WL 3311593, at *1 (Bd. Vet. App. Dec. 8, 2004); No. 0108160, 2001 WL 34585997, at *6 (Bd. Vet. App. Mar. 20, 2001); No. 0105152, 2001 WL 34582992, at *3 (Bd. Vet. App. Feb. 20, 2001).

dred decisions.[12]   This significant increase suggests both that a change had occurred in the frequency with which the VA attached CVs to examiners' reports and that the Board *preferred* having examiners' CVs.   A requirement that examiners attach their CVs to their reports would not create an undue administrative burden, particularly if examiners typically attached CVs to their reports before the presumption was created.

Since September 8, 2011, it appears that the Board has requested in a remand order that an examiner include her CV only once, in No. 1222819, 2012 WL 3271702, at *3 (Bd. Vet. App. June 29, 2012).   It appears that the Board stopped trying to order the VA to provide examiners' CVs because doing so was futile.   Numerous Board decisions state that no CV was attached to an examination report, even though the Board had requested one.[13]

---

[12]   *E.g.*, No. 1133177, 2011 WL 5316250, at *5 (Bd. Vet. App. Sept. 8, 2011)*;* No. 1132969, 2011 WL 5316041, at *12 (Bd. Vet. App. Sept. 7, 2011); No. 1101423, 2011 WL 751267, at *4 (Bd. Vet. App. Jan. 12, 2011); No. 1107166, 2011 WL 1355701, at *5 (Bd. Vet. App. Feb. 23, 2011); No. 1037779, 2010 WL 5378203, at *2 (Bd. Vet. App. Oct. 6, 2010); No. 1014091, 2010 WL 2478922, at *7 (Bd. Vet. App. Apr. 14, 2010); No. 1017678, 2010 WL 2807490, at *7 (Bd. Vet. App. May 12, 2010); No. 1009397, 2010 WL 1941350, at *9 (Bd. Vet. App. Mar. 12, 2010).

[13]   *E.g.*, No. 1443791, 2014 WL 6873578, at *9 (Bd. Vet. App. Oct. 1, 2014); No. 1336907, 2013 WL 6991931, at *2 (Bd. Vet. App. Nov. 13, 2013); No. 1320853, 2013 WL 4450861, at *2 (Bd. Vet. App. June 27, 2013); No. 1243635, 2012 WL 7016213, at *6 (Bd. Vet. App. Dec. 20, 2012); No. 1217374, 2012 WL 2881745, at *2 (Bd. Vet. App. May 15, 2012); No. 1137554, 2011 WL 6043315, at *2 (Bd. Vet. App. Oct. 5, 2011); No. 1137348, 2011 WL

Removing the presumption of competence will assist veterans in challenging the competence of examiners and reduce the risk of unqualified examiners providing opinions. Unqualified examiners are less likely to provide accurate opinions. Veterans are harmed when their claims are improperly rejected, and the public fisc is harmed when veterans' claims are improperly granted.

Establishing Competency Is Not a Ministerial Act

This court in *Rizzo* should not have applied the presumption of regularity to the VA's process of selecting examiners. The presumption of regularity is usually applied to ministerial acts such as mailing notices. *Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004). Mailing a notice is very different from selecting an examiner: mailing is administrative but determining whether a specific nurse is qualified to provide an opinion on a particular issue is not. As the Panel Opinion states, "Mathis's presumption of regularity argument in particular presents some legitimate concerns." Op. at 9. No case *Rizzo* cited when applying the presumption of regularity to medical examiners provides "a solid foundation" for *Rizzo's* holding. *Id.*

Before a presumption of regularity was applied to the VA's process for selecting examiners, there should have been "a showing, by affidavit or otherwise," that the VA's

5325231, at *2 (Bd. Vet. App. Sept. 30, 2011); No. 1134614, 2011 WL 5322294, at *3 (Bd. Vet. App. Sept. 15, 2011); No. 1134415, 2011 WL 5322094, at *2 (Bd. Vet. App. Sept. 14, 2011); No. 1129400, 2011 WL 4890482, at *2 (Bd. Vet. App. Aug. 9, 2011); No. 1122079, 2011 WL 3507772, at *1 (Bd. Vet. App. June 7, 2011). *But see* No. 1300336, 2013 WL 1093814, at *2 (Bd. Vet. App. Jan. 4, 2013) (noting that a CV was added to a report to comply with remand instructions).

process for selecting examiners was "regular." *Kyhn v. Shinseki*, 716 F.3d 572, 579 (Fed. Cir. 2013) (Lourie, J., dissenting); *see also, e.g., Echevarria-North v. Shinseki*, 437 F. App'x 941, 946 (Fed. Cir. 2011). In *Rizzo*, neither this court's decision nor the Veterans Court's decision cited evidence about the VA's process. 580 F.3d 1288 at 1292; *Rizzo v. Peake*, No. 07-0123, 2008 WL 4140421, at *2 (Vet. App. Aug. 26, 2008).

Further, it appears that creating a presumption of competence for VA examiners was outside the Veterans Courts' jurisdiction, and so this court should not have upheld the Veterans Court's creation of one in *Rizzo*. In *Kyhn*, this court held that the Veterans Court lacked jurisdiction to create a presumption of regularity for certain notices, as this required factfinding outside the record to determine that a process was regular. 716 F.3d at 578. Here, the presumption was apparently established based on an implicit factfinding of regularity.

## The Process by Which the VA Chooses Examiners is Largely Unknown

Apparently only the VA and its outside contractors know how they select examiners. The VA Manual says very little about how examiners are chosen to provide examinations or deemed qualified. One section states that "[t]he choice of examiners is up to the VA medical facility conducting the examination," unless it is necessary that a specialist be used. M21-1MR § III.iv.3.A.6.d.

A section on "Ensuring Examiners Are Qualified" states that "VA medical facilities (or the medical examination contractor) are responsible for ensuring that examiners are adequately qualified." *Id.* at § III.iv.3.D.2.b. It states that "Veterans Service Center (VSC) employees are *not* expected to routinely review the credentials of clinical personnel to determine the acceptability of their reports, unless there is contradictory evidence of record." *Id.* (Emphasis original). It appears

that, currently and when the *Rizzo* decision issued, the
choice of examiners and review of their qualifications is
often performed by outside contractors, such as QTC
Medical Services.[14]    To the extent aspects of the VA's
process for selecting examiners are known, those aspects
do not suggest that it is a regular process.

## Since the Presumption was Created, the VA Has Emphasized the Use of Non-Specialist Examiners

VA usually selects non-specialist examiners to per-
form examinations. M21-1MR §§ III.iv.3.A.1.g, h. Except
for vision, hearing, dental, and psychiatric examinations,
specialists perform medical exams only in "in unusual
cases, or as requested by a Board of Veterans' Appeals
(BVA) remand." *Id.* Also, an initial diagnosis of traumat-
ic brain injury must be made by one of the following
specialists: physiatrists, psychiatrists, neurosurgeons, or
neurologists. *Id.* at § III.iv.3.D.2.h.

While certain actors in the disability claim adjudica-
tion process may *request* a specialist examiner, the choice
of examiners is "up to the VA medical facility conducting
the examination," unless a remand from the Board specif-
ically states that the examiner must be a "Board-certified
specialist in . . . " or a "specialist who is Board qualified."
*Id.* at § III.iv.3.A(6)(d). "In the absence of a [Board]

---

[14]    *Department of Veterans Affairs Audit of VA's Ef-
forts to Provide Timely Compensation and Pension Medi-
cal Examinations*, VA Office of Inspector General (Mar.
17, 2010), http://www.va.gov/oig/52/reports/2010/VAOIG-
09-02135-107.pdf; Wesley Brown, *Local veteran says VA
contractor examinations not thorough enough*, Augusta Chron.,
(Aug. 17, 2014), http://chronicle.augusta.com/latest-
news/2014-08-17/local-veteran-says-va-contractor-
examinations-not-thorough-enough.

remand, [regional offices] may not designate qualification requirements for a specialist examination." *Id.*[15]

As the Panel Opinion notes, in September 2010, one year after *Rizzo*, the VA issued a Fast Letter emphasizing the distinction between "specialist" and "specialty" examinations.[16] Op. at 12. The letter explained that, while a regional office could request a "specialty examination" it should generally not even *request* a "specialist examination."

The VA's emphasis on using generalist examiners is concerning. While a generalist healthcare provider may have experience treating patients with a wide variety of ailments, and may be similarly qualified to treat patients as a specialist is, the opinions examiners are asked to provide are often more complicated than mere diagnosis or treatment. For example, the questions the examiner needed to answer in this case included whether Mr. Mathis's sarcoidosis occurred as a result of his military

---

[15] The VA has different guidelines for requesting opinions to be prepared without examining the veteran. M21-1MR § III.iv.3.A.7.a.

[16] A *specialty examination* focuses on the disabilities that are specifically at issue in a veteran's claim, as compared to a *general medical examination* which involves screening all body systems. A *specialist examination* is any examination that is conducted by a clinician who specializes in a particular field. M21-1MR §§ III.iv.3.A.1.f, g, h.

The VA Manual does not indicate that someone can ever request that an opinion be prepared by a specialist, when the opinion is prepared without an examination of the veteran. The VA Manual distinguishes between examinations and opinions, and there is no discussion of requesting specialist medical opinions.

service, if it began while he was in service, or if symptoms of it had occurred within one year of his service.[17]

Particularly when an examiner is presented with issues such as what caused a disease or when it began, the examiner's opinions are necessarily somewhat speculative, even when the examiner is an expert on that disease. Specialist doctors exist because the body of medical knowledge is larger than any individual doctor can learn, and it continues to grow as new research is conducted. No doctor can read every journal in every specialty.

In some circumstances, specialist examiners are preferable. A specialist doctor has years of additional training in her specialty beyond that of a generalist doctor, and will often also have more experience in her specialty. The Board sometimes requests examiners with specific expertise, although the VA considers itself free to disregard

---

[17] *See also, e.g.*, *Rizzo*, 580 F.3d at 1289 (whether a veteran's radiation exposure during military service caused his eye conditions); *Parks,* 716 F.3d at 583 (whether a veteran's exposure to three chemical warfare agents as part of a classified project were related to his diseases); *Bastien*, 599 F.3d at 1303–04 (whether a veteran's participation in military experiments involving radiation caused his diseases); *D'Auria*, 2015 WL 5307462 at *1 (whether a veteran's exposure to asbestos and smoke as an Air Force fire inspector caused his diseases); *Temples*, 2015 WL 4169190, at *3 (whether a veteran's exposure to Agent Orange caused his diseases); *Johnson*, 2015 WL 4075155, at *2–3 (whether a veteran's service-connected hip disabilities made him unable to find gainful employment).

such requests unless they specifically require a board-certified or "board qualified" examiner.[18]

Medicine is like law. While a generalist lawyer may be qualified to take on a wide variety of cases, if someone has a narrow question about a certain area of the law and it is important that she receives a good answer, it may be preferable for her to ask a lawyer specialized in that area with at least a few years of experience. No lawyer can be an expert in every area of the law.

In the first cases establishing the presumption of competence, this court appears to have found it important that the examiners had expertise in the area they testified about. In *Rizzo*, this court observed that the VA examiner, who had been asked to opine on radiation, was "a medical doctor[,] serves as VA's Chief Officer of Public Health and Environmental Hazards[, and] represented VA's Under Secretary for Health, whose opinion the Board must consider in claims based on exposure to ionizing radiation" under a regulation. 580 F.3d at 1291. In *Bastien*, where the issue was whether radiation exposure caused blood cancer and lymphoma, the VA submitted reports from "Dr. Mather, [the VA's] Chief Public Health and Environmental Hazards Officer," and "Dr. Pasquale, a hematologist, who was also an associate professor of medicine at Albany Medical College." 599 F.3d at 1304. It seems that the presumption as applied in those cases was a presumption that a doctor with exper-

---

[18] *See supra*, p. 17. Examples of cases where the Board requested a specialist but the request was apparently disregarded by the VA include *Kanuch v. Shinseki*, No. 11-3711, 2013 WL 1200607, at *2 (Vet. App. Mar. 26, 2013); No. 1336907, 2013 WL 6991931, at *2 (Bd. Vet. App. Nov. 13, 2013); and No. 1320853, 2013 WL 4450861 at *2 (Bd. Vet. App. June 27, 2013).

tise in a certain topic was qualified to opine on that topic. This court has stated that "one part of the presumption of regularity is that the person selected by the VA is qualified by training, education, or experience *in the particular field*." *Parks*, 716 F.3d at 585 (emphasis added).

As the presumption has been interpreted and applied, however, it has come to mean that any healthcare professional is competent to opine on any disease or condition, unless it is a vision, hearing, dental, or psychiatric problem, or is an initial examination for traumatic brain injury. As VA examiners usually do not have expertise in the field they opine about, a presumption of competence should not apply.

## Since the Presumption was Created, the VA Removed Its Requirement that All Reports Needed to be Signed by a Doctor

When the presumption was created, the VA Manual stated that "[a]ll original examination reports *must* be signed by a physician, unless the examination was performed by a clinical or counseling psychologist, dentist, audiologist, or optometrist." M21-1MR § III.iv.3.D.19.a (2007). Reports of examinations conducted by "qualified medical examiners other than physicians" were only acceptable if they were signed by a physician. *Id.*

Now, the corresponding provision states that "[a]ll examination reports *must* be signed by the examining health care provider." M21-1MR § III.iv.3.D.2.a. No doctor's signature is required. It appears that the only time that a doctor's co-signature is required for examinations performed by non-doctors is when, for initial mental disorder examinations, certain specified examiners perform an examination under the supervision of a board-certified or board-eligible psychiatrist or licensed doctorate-level psychologist. *Id.* at § III.iv.3.D.2.f. This change was announced in September 2010 in Fast Letter 10-32.

Doctors undergo significantly more education, training, and experience before they are licensed to practice than most other healthcare professionals. As a result, this change represents a significant decrease in the minimum qualifications needed for the examiner who ultimately approves an examination report after *Rizzo*.

A Recent Incident Demonstrates that the VA's Process for
Selecting Examiners is Not Regular

The VA's process for determining which examiners conduct examinations does not always result in a competent examiner being selected.[19] Initial examinations for traumatic brain injury are treated differently than most other diseases, and must be performed by only certain types of doctors. M21-1MR § III.iv.3.D.2.h. The Minneapolis VA admitted in the fall of 2015, however, that since 2010 many examinations for traumatic brain injury had been conducted by unqualified examiners.[20] The VA has denied Freedom of Information Act requests seeking the

---

[19]   *See, e.g.*, *Minnesota lawmaker calls for inquiry into VA brain exam*, Wash. Times (Sept. 10, 2015), http://www.washingtontimes.com/news/2015/sep/10/minnesota-lawmaker-calls-for-inquiry-into-va-brain/; A.J. Lagoe & Steve Eckert, *VA fighting release of names tied to brain injury exams*, KARE 11 (Minn.), (Sept. 8, 2015), http://legacy.kare11.com/story/news/investigations/2015/09/08/va-fighting-release--names-tied--brain-injury-exams/71900484/; Steve Eckert and A.J. Lagoe, *Unqualified doctors performed brain injury exams at Mpls VA Medical Center*, Kare 11 (Minn.), http://legacy.kare11.com/story/news/investigations/2015/08/05/unqualified-medical-personnel-performing-exams-mpls-va-medical-center-traumatic-brain-injury/31168581/.

[20]   *Id.*

qualifications of examiners who performed traumatic brain injury exams.[21]

To receive disability benefits, a veteran generally must show that he has been diagnosed with a current disability, that he suffered an in-service incurrence or aggravation of a disease or injury, and that there is a causal link, or nexus, between his present disability and the disease or injury incurred or aggravated during military service. *Leonhardt v. Shinseki*, 463 F. App'x 942, 945 (Fed. Cir. 2012). VA examiners perform examinations that may be directed to any or all of these factors.

The cited news articles describe veterans who suffered head injuries during service. The VA examiners were tasked with determining whether a diagnosis of traumatic brain injury was appropriate. As noted, the VA Manual requires certain specialized doctors to have performed these diagnosis examinations, but such doctors were not used. The VA failed to ensure that the examinations were performed by qualified doctors starting in 2010, after *Rizzo* issued in 2009. This suggests that requiring the VA to present the qualifications of its examiners for Board review is appropriate, to ensure that the VA is selecting qualified examiners for all examinations.

## Conclusion

Reversing precedent requires justification beyond a belief that the precedent was wrongly decided. *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015). A court may overrule its own decisions "when they are 'unworkable or are badly reasoned,' when 'the theoretical underpinnings of those decisions are called into serious question,' when the decisions have become 'irreconcilable' with intervening developments in 'competing legal doctrines or policies,' or when they are otherwise 'a positive

---

[21]   *Id.*

detriment to coherence and consistency in the law.'" *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2425 (2014) (Thomas, J., concurring) (citations omitted).

Overruling precedent is "particularly appropriate" when "the precedent consists of a judge-made rule that was recently adopted to improve the operation of the courts, and experience has pointed up the precedent's shortcomings," and where "subsequent legal developments have unmoored the case from its doctrinal anchors." *In re One2One Commc'ns, LLC*, 805 F.3d 428, 449 (3d Cir. 2015) (citations omitted).

These circumstances are met in this case. Having taken full advantage of the presumption, the VA no longer provides any information about its examiners' qualifications. A veteran must convince the Board or the Veterans Court to order the VA to produce such information. Before the Board will consider whether an examiner was qualified, the veteran must sufficiently object to the examiner's qualifications. But a veteran has difficulty objecting without knowledge of an examiner's qualifications.

This outcome is absurd. "The government's interest in veterans cases is not that it shall win, but rather that justice shall be done." *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006). The presumption makes the choice of examiners and their qualifications effectively unreviewable, and bars consideration of an examiner's qualifications in weighing the persuasive value of her testimony. The burden on the VA would be minimal if we restore the status quo before the presumption of competence was established. A veteran's need for a CV certainly outweighs the burden of routinely attaching it.

A presumption based on no evidence is an assumption. Assuming that every examiner is competent stacks the deck against a veteran seeking to challenge an ad-

verse medical opinion.  We should overturn the "assumption of competence."  The VA should provide evidence regarding the qualifications of the examiners on whose opinions it relies when denying veterans benefits.